*Decision will be entered under Rule 50.*

VAUGHN V. CHAPMAN AND MILDRED E. CHAPMAN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6034-65. Filed June 21, 1967.

*W. Ewart G. Suffel*, for the petitioners.
*Harold E. Patterson*, for the respondent.

FAY, *Judge:* Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1961 in the amount of $413.24.

The issues for determination are (1) whether contributions made by petitioners to the Missionary Dentist, Inc. (a.k.a. Worldwide Dental Health Service), were made to a church, educational organization, or a hospital within the meaning of section 170(b)(1)(A) of the Internal Revenue Code of 1954[1] and (2) whether the expenses of a garden party given by petitioners are properly deductible as ordinary and necessary business expenses of Vaughn V. Chapman's dental practice.

### FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference.

---

[1] Respondent has conceded that contributions made by petitioners to various organizations, totaling $75, qualify for the additional 10-percent allowance.

Vaughn V. Chapman (hereinafter sometimes referred to as Vaughn) and Mildred E. Chapman (hereinafter sometimes referred to as Mildred), husband and wife, filed a joint Federal income tax return for the calendar year 1961 with the district director of internal revenue at Tacoma, Wash. The residence of Vaughn and Mildred is in Seattle, Wash.

During the year 1961, Vaughn was engaged in the practice of dentistry and Mildred was employed as a school teacher.

In the taxable year 1961 petitioners made contributions to the Missionary Dentist, Inc. (a.k.a. Worldwide Dental Health Service) (hereinafter sometimes referred to as the Missionary Dentist), in the amount of $5,865.16. The sum of $5,061.11, which was equal to 30 percent of petitioners' adjusted gross income for 1961, was claimed by them as a charitable contribution deduction in their joint income tax return for that year.

The Missionary Dentist is a religious and charitable organization which was incorporated in 1950. The organization was exempt from income taxation pursuant to section 101(6) of the Internal Revenue Code of 1939,[2] as a religious and charitable organization. It is interdenominational and is not affiliated with or subservient to any church group or denomination; rather, it is totally independent.

The purpose of the Missionary Dentist, as stated in its articles of incorporation, is:

The object of this organization shall be to care for the dental health of missionaries, religious workers and all others in the Mission Fields of the United States and foreign countries in need of dental care, to supply dentists, dental technicians and hygienists for Missionary Boards of various denominations and for independent Missionary Boards. The underlying object of this organization shall be the promotion of the Gospel of the Lord Jesus Christ, around the world, and the evangelization of the world on the basis of the principles of the Protestant Faith. This shall be a non-profit, religious, charitable and benevolent organization.

In the United States, the organization conducts regular services and in addition provides various churches with speakers and literature concerning its objects.

The organization's members are all trained in Bible and church work. Some are ordained ministers and others are seminary or Bible school graduates. The organization does not itself conduct a seminary or Bible school but, as it is interdenominational, seeks to draw upon

---

[2] Sec. 101(6) provides:

SEC. 101. EXEMPTIONS FROM TAX ON CORPORATIONS.

(6) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation;

the graduates of other Christian-Protestant schools for ministers and other trained personnel.

According to its constitution, membership in the organization is limited to those, who, *inter alia*,

(1) are members in full communion of an accredited Christian community;

(2) have passed through an accredited dental school and have obtained a State license in some State of the United States or a license from a foreign country if deemed accredited by the board of directors; and

(3) have some satisfactory spiritual preparation and personal experience with the lost such as shall meet satisfaction of the board of directors.

The underlying function of the members of the organization is to preach the Gospel around the world, using dentistry as a means by which to contact people. In general, the organization sends its members in teams to foreign countries where they set up base clinics. While there, in addition to caring for the dental health of the area, the members conduct religious services and attempt to establish small indigenous churches among the people of the area. In one instance, they have set up a small school, located in Cameroun, Africa, where dentistry is taught.

Finally, the members seek to improve the type of dental care available in foreign countries. This segment of the members' activity is usually confined to supervision of the local practitioners who are encouraged to practice in the base clinics.

In addition to their contribution to the Missionary Dentist, petitioners also made contributions to various organizations totaling in amount $75. Respondent has stipulated that petitioners are entitled to deduct these contributions to the extent they do not exceed 30 percent of their 1961 adjusted gross income.

Also in 1961 petitioners expended the sum of $89.50 in entertaining students and faculty members of the school at which Mildred taught. This entertainment was in the form of a garden party, which took place at their home.

The primary purpose of the garden party was to enable Mildred to socialize with her students and colleagues. In addition, however, Vaughn's presence at the party gave him the incidental benefit of meeting persons who might constitute potential patients because in the normal course they would usually become aware of the fact that he was a member of the dental profession.

On their joint Federal income tax return, this expenditure was first characterized as a requirement of Mildred's employment. Petitioners now suggest that the expenditure was more properly an expense of Vaughn's dental practice.

OPINION

The first issue for determination is whether the contributions made by petitioners to the Missionary Dentist qualify for the additional 10 percent of adjusted gross income allowance as provided for by section 170(b)(1)(A).

Section 170(b)(1)(A) provides that in the case of an individual a contribution deduction will be allowed to the extent that the aggregate of such contributions does not exceed 10 percent of the taxpayer's adjusted gross income, if such contribution is made to:

(i) a church or a convention or association of churches,
(ii) an educational organization referred to in section 503(b)(2), or
(iii) a hospital referred to in section 503(b)(5), * * *

Petitioners contend that the Missionary Dentist meets each of the three above classifications and as such their contribution to it qualifies for the additional 10-percent allowance. Respondent, on the other hand, urges that the organization is neither a church, an educational organization, nor a hospital as those terms are defined in the statute and as such petitioners' deduction is limited to the general 20-percent allowance contained in section 170(b)(1)(B).

We are of the opinion that the Missionary Dentist does not qualify under either clause (i), (ii), or (iii) of section 170(b)(1)(A) as it is neither a church, an educational organization, nor a hospital within the intent of those clauses.

Before proceeding further, it is appropriate to point out the particular limits of our present inquiry. We are not here concerned with the question as to what constitutes a "religion" within the purview of the first amendment of the Constitution; we are solely concerned with divining what Congress intended when it granted an additional 10-percent allowance for a special class of charitable contributions.

Petitioners' initial and main contention is that the Missionary Dentist qualifies as a church or a convention or association of churches within the purview of clause (i).

Respondent does not dispute the fact, nor could he, that this is a religious organization. We have no doubt whatsoever that the Missionary Dentist is a religious organization whose purpose and method of operation are both laudatory and worthy of public support, and we feel that its members are to be commended for their efforts. What respondent does contend is that not every religious organization is necessarily "a church or a convention or association of churches" within the purview of section 170(b)(1)(A) and that this organization, though admittedly religious, is not a church or a convention or association of churches.

The phrase "church or a convention or association of churches" originated in the Revenue Act of 1950 in section 301(a) in relation to

the taxation of the unrelated business income of exempt organizations, the so-called Supplement U tax (section 421(b)(1), I.R.C. 1939, and presently sec. 511(a)(2)(A), I.R.C. 1954). S. Rept. No. 2375, 81st Cong., 2d Sess., p. 106, (1950), states:

While churches, and associations or conventions of churches, * * * are exempt from the Supplement U tax, religious organizations are subject to such tax even though organized under church auspices. This is also true of organizations with charitable, educational, etc., purposes which are organized under church auspices. * * *

The phrase again appears in the Revenue Act of 1951 in section 402(b) amending section 1701 of the 1939 Code in relation to exemptions from the excise tax on admissions.[3] In the original House version, an exemption from the tax was granted to religious institutions generally as had been the case under the original section 1701(a) prior to October 1, 1941. In the Senate, however, this exemption was limited to "a church or a convention or association of churches." In commenting on this amendment to the House version, the Senate Finance Committee report states:

Under the House bill, as under section 1701 prior to October 1, 1941, the exemption from tax applies if the proceeds of the admissions inure exclusively to the benefit of religious * * * institutions. Your committee, however, proposes to limit the exemptions to certain defined classes * * * within these categories. Under the amendment proposed by your committee, religious institutions are restricted to churches or conventions or associations of churches. * * * [S. Rept. No. 781, Part 2, 82d Cong., 1st Sess., p. 68 (1951), 1951-2, C.B. 592.]

The Senate amendments were eventually adopted, as section 402(b)(1)(A)(i) of the Revenue Act of 1951.

In enacting the Internal Revenue Code of 1954, Congress enacted section 170(b)(1)(A)(i), the provision in question. In the House version of the bill, the phrase "churches or conventions of churches" was again employed with the additional phrase "or a religious order." See generally H. Rept. No. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., p. 25 (1954). The Senate, however, deleted the latter phrase in order to clarify the provision. S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., p. 30 (1954), states:

Your committee understands that "church" to some denominations includes religious orders as well as other organizations which, as integral parts of the church are engaged in carrying out the functions of the church whether as separate corporations or otherwise. It is believed that the term "church" should be

---

[3] Sec. 1701, though rendered inapplicable by sec. 541(b) of the Revenue Act of 1941, was reinstated by sec. 402(a) of the Revenue Act of 1951.

all inclusive.[4] To retain the phrase "or a religious order" in this section of the bill will tend to limit the term and may lead to confusion in the interpretation of other provisions of the bill relating to a church, a convention or association of churches. * * *

The Senate version was accepted by both Houses of Congress. See Conf. Rept. No. 2543, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., p. 29 (1954).

The House Ways and Means Committee also stated that:

This amendment by your committee is designed to aid these institutions in obtaining the additional funds they need, in view of rising costs and the relatively low rate of return they are receiving on endowment funds. [H. Rept. No. 1337, *supra.*]

It is our opinion, based upon the foregoing legislative history of the phrase "church or convention or association of churches," that indeed, as respondent contends, though every church may be a religious organization, every religious organization is not per se a church. Where Congress, in creating an additional allowance over and above the allowance for contributions to religious organizations, used a new word or phrase in the statute, it must reasonably be concluded that a different connotation was intended. In the circumstances of section 170(b)(1)(A)(i), we find that a more limited concept was intended than that denoted by the term "religious organization."

It is our opinion that Congress did not intend that the word "church" be used in a generic or universal sense. We think that this conclusion is buttressed in particular by the fact that in explaining the deletion of the phrase "or a religious order" the concept of "church" appears to be synonymous with the concept of "denomination." In addition, phrases appearing throughout the quoted legislative history, such as "under church auspices" and "as integral parts of the church" lend credence to our view that the term is intended to be synonymous with the terms "denomination" or "sect" rather than to be used in any universal sense. This is not to imply, however, that in order to be constituted a church, a group must have an organizational hierarchy or maintain church buildings.

We must now determine whether the Missionary Dentist is within the limits of this statutory definition. We are of the opinion that it is not "a church or convention or association of churches" within the intendment of section 170(b)(1)(A)(i).

---

[4] Congress, in stating "that the term 'church' should be all inclusive," did so in the specific context of including within its scope "religious orders as well as other organizations which as integral parts of the church are engaged in carrying out the functions of the church." There is no indication whatsoever to suggest that the concept "church" be "all inclusive" to the point of encompassing all religious organizations and to so interpret this language would be to read it out of the context in which it was used.

To summarize briefly the facts presented, the Missionary Dentist is an evangelical organization whose primary function is to spread the Gospel of Christianity throughout the world. It is interdenominational and seeks to draw its missionaries from established Christian-Protestant churches. It maintains neither a seminary nor a Bible school, yet many of its members are graduates of such schools. Its members are for the most part practicing dentists or technicians. It regularly conducts religious services and seeks to promote its missionary activity by taking part in the services of other organizations as well as through the normal advertising media. In order to accomplish its goal, to spread the Gospel of Christianity, it sends out evangelical teams to preach throughout the world. These teams use dental services as the means by which they contact prospective converts to Christianity. These teams conduct religious services and urge the people to establish small indigenous churches in that particular locale. They do not attempt to promote membership in their own missionary organization.

We think it apparent from this record that the organization in question is not of a type that could be said to be a denomination or sect. It is a group of missionary workers drawn from many Christian churches who give of their time and talents to spread universal Christian beliefs. All its members must be in full communion of an accredited Christian community in order to be affiliated with the organization. It is interdenominational and independent of any connection with the churches with which its members are affiliated. It does not seek converts other than to the principles of Christianity generally and if successful urges these converts to establish their own native churches.

Petitioners urge that because the organization's members preach and conduct religious services they are within the statutory definition. We cannot agree. Though these are, without doubt, functions normally associated with a church, this per se is not conclusive. The test as envisioned by Congress is, was the organization "a church" or an integral part of a church which is engaged in carrying out church functions. The Missionary Dentist is not a church. It is merely a religious organization comprised of individual members who are already affiliated with various churches. Nor is the Missionary Dentist an integral part of any church within the purview of respondent's regulations. See sec. 1.511–2(a)(3)(ii), Income Tax Regs. The record is clear that the organization is interdenominational, totally independent of, and therefore not an integral part of any church.

Without going further, we are of the opinion that the record lends no support to any argument that the organization might qualify as

"a convention or association of churches," and petitioners have not so argued.

Petitioners next urge that the Missionary Dentist qualifies as an educational institution within the purview of section 170(b) (1) (A) (ii). Section 503(b) (2) defines an educational organization for the purposes of section 170(b) (1) (A) (ii) as—

(2) an * * * organization which normally maintains a regular faculty and curriculum and normally has a regularly enrolled body of pupils or students in attendance at the place where its educational activities are regularly carried on;

Though the record reveals that the Missionary Dentist operates one small school and seeks to "educate" local dentists, these are merely incidental activities. The major function of the organization, according to its articles of incorporation, is the evangelization of the world on the basis of the principles of the Protestant faith. This statement of religious purpose was further emphasized by the organization's president (Vaughn) at the trial of this matter. In explaining the purpose of the educational activity, he stated:

Our purpose in doing this is to talk to them about Jesus Christ. If we didn't have the gospel in it we would fold up and quit. The whole thing is to make people acquainted with Jesus Christ and what he can do for them.

We do not believe that section 503(b) (2) was intended to encompass an organization which is engaged in noneducational activity but which incidentally engages in some form of educational activity to further its major function. We, therefore, hold that the Missionary Dentist is not an educational organization within the purview of section 503(b) (2).

Nor are we of the opinion that it can qualify as a hospital within the meaning of section 503(b) (5). Section 503(b) (5) defines a hospital as—

(5) an organization the principal purposes or functions of which are the providing of medical or hospital care or medical education or medical research or agricultural research.

The record does not reveal sufficient information to enable us to conclude that one of the principal purposes or functions of the Missionary Dentist is to provide medical or hospital care. We must, therefore, hold that petitioners have not met their burden of proof in this regard. The information which does appear in the record tends to militate against their position, for as petitioners state on brief, "The dental services performed provide just one of the means employed by our work to get them to hear the Gospel message." Petitioners have not shown that their dental activity in 1961 was one of the principal purposes or functions and because incidental activity is insufficient under section 503

(b) (5) to characterize the Missionary Dentist as a "hospital," we must reject petitioners' contention.

We, therefore, hold for the respondent on this first issue, namely, that a contribution to the Missionary Dentist does not qualify for the additional 10-percent allowance provided for in section 170 (b) (1) (A).

With regard to the second issue for determination, namely, the deductibility of the amount of $89.50, the cost of a garden party, we hold that this expenditure is not properly deductible as an ordinary and necessary expense of Vaughn's dental practice.

Whether expenditures of this type are deductible as ordinary and necessary expenses of Vaughn's business within section 162 [5] is primarily a question of fact, *Commissioner* v. *Heininger*, 320 U.S. 467 (1943); *James Schulz*, 16 T.C. 401 (1951), and the burden of proof is upon the taxpayers. *Bennett's Travel Bureau, Inc.*, 29 T.C. 350 (1957). Petitioners must show that the purpose of the expenditure was primarily business rather than social or personal. *James Schulz, supra.*

We are not satisfied that petitioners have met this burden. In fact, we feel that the entire record reveals to the contrary, namely, that the primary motivation was social and personal rather than business. We agree with petitioners that Vaughn may well indirectly profit in a professional sense from increasing his social contacts, but we are of the opinion, on the facts before us, including the circumstance that the expenditure was first characterized as pertaining to Mildred's occupation as a teacher, that the expenditure was primarily motivated by social considerations and as such it is not deductible. See sec. 262; [6] *James Schulz, supra; Louis Boehm*, 35 B.T.A. 1106 (1937).

Reviewed by the Court.

*Decision will be entered under Rule 50.*

RAUM, *J.*, concurs in the result.

---

DAWSON, *J.*, concurring: I agree with the conclusions in this case, but I would like to add the following comments.

I think the Missionary Dentist is not a "church" within the definition of that term as implied in section 1.511–2 (a) (3) (ii), Income Tax Regs., which seems to me appropriate and reasonable. Cf. *De La Salle Institute* v. *United States*, 195 F. Supp. 891, 900–906 (N.D. Cal., 1961). To be a "church" a religious organization must engage in "the ministration of sacerdotal functions and the conduct of religious wor-

---

[5] SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *

[6] SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES.

Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.

ship" in accordance with "the tenets and practices of a particular religious body." The Missionary Dentist, however worthy its cause and service might be, simply does not conduct religious worship according to the "tenets and practices of a particular religious body." It is interdenominational. It is not affiliated with any particular religious body. Its purpose is not to propagate the tenets or beliefs of a specific religious group. Moreover, proof is lacking as to the ministration of sacerdotal functions by members of the organization. Consequently, I believe it fails to qualify as "a church or a convention or association of churches" within the ordinary meaning of those terms.

TIETJENS and SIMPSON, *JJ.*, agree with this concurring opinion.

----------

TANNENWALD, *J.*, concurring: I agree with the conclusion that the Missionary Dentist is neither a church nor a hospital nor an educational organization but I disagree as to some of the reasoning which has been adopted to support that conclusion.

My main difficulty with the majority opinion stems from its definition of "church" as requiring an organizational structure in terms of a denomination or sect. Granted that Congress clearly intended that the word "church" have a restrictive meaning, I do not think that this should be the touchstone any more than I think that an organization must own or utilize buildings or other physical facilities to be so considered. In approaching the question of what Congress had in mind, we should take a common sense approach and posit our conclusion on the meaning of "church" in ordinary, everyday parlance.

In this context, we should look not only at the purposes of the organization but *the means* by which those purposes are accomplished. Clearly, religious purposes and means are not enough. Otherwise there would have been no necessity for Congress to distinguish between a "religious organization" and a "church." There is no question but that propagation of the faith coincides with the purpose of a "church." But not every evangelical organization is a church in the sense with which we are concerned herein.

In my opinion, the word "church" implies that an otherwise qualified organization *bring people together as the principal means* of accomplishing its purpose. The objects of such gatherings need not be conversion to a particular faith or segment of a faith nor the propagation of the views of a particular denomination or sect. The permissible purpose may be accomplished individually and privately in the sense that oral manifestation is not necessary, but it may not be accomplished in physical solitude. A man may, of course, pray alone, but, in such a case, though his house may be a castle, it is not a "church." Similarly, in my opinion, an organization engaged in evangelical activity exclusively through the mails would not be a "church."

I recognize that my emphasis on spiritual togetherness as a characteristic of a "church" might well present problems if we were dealing with a constitutional question or if we were called upon to determine the philosophical, theological, or ecclesiastical refinements of the word. But we are called upon herein to deal with a very narrow—indeed, prosaic—question: Is the petitioner entitled for income tax purposes to an extra 10-percent deduction for contributions to a "church"?

Applying the standards which I have delineated, it is my judgment that, on the record before us, the Missionary Dentist is not a "church" in the sense that Congress used the word. A sizable segment of its efforts to propagate the faith was performed on an individual basis. To be sure, it is stipulated that the Missionary Dentist conducted religious services, but the testimony in regard to such services was so general that the significance of those services in relation to the total activities of the organization cannot be determined. Moreover, petitioner cannot escape the fact that, irrespective of its purpose, a large part of the efforts of the Missionary Dentist was the furnishing of dental service, that this service was the ostensible vehicle for all its activities, and that its other activities, though considered important, were nevertheless accessorial. The degree to which the critical element of spiritual togetherness is missing is too large to enable us to accept petitioner's contention.

Nor can the Missionary Dentist qualify as a "hospital." Here again, Congress intended that a restricted meaning be given to this word. Section 503(b)(5) specifies "an organization, the principal purposes or functions of which are the providing of medical or hospital care or medical education or medical research or agricultural research." Section 170(b)(1)(A)(iii) specifies, as far as is applicable to this case, "a hospital referred to in section 503(b)(5)." The dictionary definition of "hospital" is "an institution or place where sick or injured persons are given medical or surgical care." Webster's New International Dictionary (3d ed. 1961). Assuming that an outpatient clinic may qualify as a hospital (sec. 1.170–2(b), Income Tax Regs.) and important as the care of teeth may be, a dental clinic simply does not fit the common, everyday meaning of "hospital." Yet, dental service is essentially all that the Missionary Dentist provided. The facts that on occasion a patient remained at the clinic because of travel necessitated by distances involved or that oral surgery was sporadically performed do not require a different conclusion.

As far as any claim that the Missionary Dentist was an "educational organization" is concerned, the simple answer is that the record herein, with the possible exception of one small school which constitutes a very minor part of its activities, is devoid of any evidence that "a regular

faculty and curriculum" was maintained which "a regularly enrolled body of pupils or students" normally attended. Sec. 503(b)(2).

Hoyt, *J.*, agrees with this concurring opinion.