AVERY BRUNDAGE AND ELIZABETH D. BRUNDAGE, PETITIONERS *v.* COM- MISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1209-68.    Filed July 8, 1970.

*Ralph E. Davis* and *William P. Sutter*, for the petitioners.
*Seymour I. Sherman*, for the respondent.

OPINION

DAWSON, *Judge:* Respondent determined a deficiency of $15,547.59 in petitioners' Federal income tax for the year 1963.

The only issue for decision is whether a gift made by petitioners in 1963 to the City and County of San Francisco for use in the M. H. de Young Memorial Museum qualifies for the additional deduction of 10 percent of adjusted gross income under section 170(b)(1)(A)(ii), I.R.C. 1954,[1] as a gift to the type of "educational organization" defined in section 503(b)(2).

All of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference and are adopted as our findings of fact. Those facts which we regard as pertinent to the disposition of the controverted issue are summarized below.

Avery and Elizabeth D. Brundage (herein called petitioners) are husband and wife who resided in Chicago, Ill., at the time they filed their petition in this proceeding. They filed their Federal income tax return for the year 1963 on the cash receipts basis with the district director of internal revenue at Chicago, Ill. Petitioners signed consents extending the period of time within which respondent might assess additional income taxes to December 31, 1967. Respondent timely mailed his notice of deficiency to petitioners on December 27, 1967. The notice determined a deficiency by increasing petitioners' taxable income for the year 1963 by disallowing certain charitable deductions totaling $22,892.89.

Avery Brundage (herein called petitioner) acquired over a period of years an extensive and significant collection of oriental art objects. On July 15, 1959, petitioners and the Avery Brundage Foundation (an Illinois not-for-profit corporation) agreed to convey their respective shares of the Avery Brundage Oriental Art Collection to the City and County of San Francisco (a municipal corporation, sometimes referred to herein as the City). The City agreed to permanently house and display the collection in the M. H. de Young Memorial Museum, which is a public museum supported by the City. The collection consists of approximately 6,000 pieces, including jade, Chinese bronzes and ceramics, and Khmer sculpture. To house these treasures the voters of San Francisco approved a $2,725,000 bond issue for the construc-

---

[1] All statutory references relate to the provisions of the Internal Revenue Code of 1954 which were in effect in the year 1963 unless otherwise indicated.

tion of a new west wing for the museum. Petitioners made gifts of parts of the collection in each of the years 1961, 1962, and 1963.

The museum was conveyed to the City of San Francisco in 1919 "in the name of humanity and education," and was accepted by the City for the purpose of "affording to all an opportunity for education, recreation and the appreciation of the arts." Supporting the proposition to authorize the bond issue to finance the new wing, the City informed voters that the collection "is a priceless educational treasure which will provide enriched learning experiences for San Francisco's school children." The voters approved the bond issue on June 7, 1960.

In 1963 the museum maintained an education department under supervision of two curators, Charles and Miriam Lindstrom. In presenting the museum's educational programs the Lindstroms were assisted by members of the museum staff, a group of trained, unpaid volunteers (docents), a group of 25 students from San Francisco State College who received academic credit for working as teaching assistants in the museum's classes for children, and various guest lecturers from universities and museums throughout the nation and abroad.

During 1963 the museum offered three 10-week courses for children: "Picture-making" for children 4 to 8 years of age; "Art and Nature" for children 9 to 11; and "Fundamentals of Art" for those 12 to 15. These 10-week courses were offered in four separate terms during the year. Total attendance (one person at one session) for 1963 was 6,334, with registration exceeding capacity.

During 1963 the museum also offered courses for adults. "Exercises in Perception," combining lectures, practice, and instruction, consisted of 12 weekly sessions, each session being offered three times during the week. Attendance (again one person at one session) totaled 3,740 persons. "Exercises in Oil Painting," a beginning course for those who completed "Exercises in Perception," offered a 4-week course of 6 sessions, or an 8-week course of 24 sessions and drew 2,905 in total attendance. "Analysis of Masterworks," an advance course in painting, drew 540 persons to its 14 sessions.

For prospective docents the museum conducted a training course lasting 10 weeks. Thirty-five persons took the course in 1963.

Special lectures for visiting university classes or adult groups were attended by 7,360 persons. The guest lectures and recorded lectures were presented to 31,650 adults. Over 1,500 school teachers, accompanied by 38,166 school children, heard gallery lectures given by the docents.

For all parts of the educational program, total attendance (one person at one session) in 1963 was 92,598. Total attendance for the museum as a whole was 1,162,558 during the fiscal year ended June 30, 1963.

The City, through its board of education, operates the public schools in the San Francisco area. The San Francisco Unified School District in 1963 operated 101 elementary schools, 15 junior high schools, 8 high schools, one junior college, and 19 miscellaneous educational facilities. The schools employed 4,540 teachers who taught 135,595 students. In 1963, 1,074 classes with 38,166 students from these schools and others visited the museum and heard gallery talks or lectures. Often the lectures gave special attention to subjects of interest to particular classes. For many years the museum has provided special services for the San Francisco schools, including the loan of exhibits, audio-visual materials, and lecturers. In 1963, as is the custom, it held the Ninth Biennial Exhibition of Children's Art in cooperation with the school district.

The nexus to the allowance of the additional deduction of 10 percent of adjusted gross income specified in section 170(b) (1) (A)[2] is whether the M. H. de Young Memorial Museum is an "educational organization" as defined in section 503(b) (2),[3] prior to its repeal by the Tax Reform Act of 1969.

Respondent acknowledges that the museum is "educational" in the broad sense in which that term is used in section 501(c) (3), but argues that it does not possess the specific requirements of the type of student-faculty "educational organization" described in section 503(b) (2). We disagree with respondent. We think the museum qualifies as an "educational organization" within the purview of section 503(b) (2). First, the museum has a "regular faculty." The two curators of the education department, together with the paid staff, fit the ordinary definition of "teaching staff and those members of the administrative staff having academic rank in a college, university or other *educational institution*." Webster's Third New International Dictionary, Unabridged (1961). Second, the courses for adults and children, consisting of related sessions presented over a period of weeks, satisfy the curriculum requirement. Third, in these courses, regular enrollment was required

---

[2] Sec. 170(b) (1) (A) provides, in pertinent part, as follows:
(b) LIMITATIONS.—
(1) INDIVIDUALS.—In the case of an individual the deduction provided in subsection (a) shall be limited as provided in subparagraphs (A), (B), (C), and (D).
(A) SPECIAL RULE.—Any charitable contribution to—
(i) a church or a convention or association of churches,
(ii) an educational organization referred to in section 503(b) (2) * * *
* * * * * * *
shall be allowed to the extent that the aggregate of such contributions does not exceed 10 percent of the taxpayer's adjusted gross income computed without regard to any net operating loss carryback to the taxable year under section 172.
[3] Sec. 503(b) (2) provided:
(2) an educational organization which normally maintains a regular faculty and curriculum and normally has a regularly enrolled body of pupils or students in attendance at the place where its educational activities are regularly carried on.

because of their limited capacity and the logical progression of the presentations. Fourth, these activities were regularly carried on at the museum. In short, the museum operated in substantial part as a school, and to that extent it meets the literal requirements of section 503(b)(2).

Respondent contends that even if the museum operates a school, it still fails to qualify because it is not an organization "whose primary function is the presentation for formal instruction" under section 1.170-2(b)(3), Income Tax Regs.[4] Petitioner attacks this regulation as invalid, arguing that it raises an additional requirement not warranted by the plain language of the statute. Since museum attendance exceeded 1 million persons in 1963, while the education department reported attendance of less than 100,000 at all of its programs, formal or informal, petitioners cannot effectively claim that the museum satisfies this requirement in the regulation.

Respondent's regulation is based on the premise that section 503(b)(2) should be read so as to include only schools, colleges, and universities. He cites *Vaughn V. Chapman*, 48 T.C. 358 (1967), which held only that educational activity must be more than "incidental." Petitioners' position is that if Congress had meant schools, colleges, and universities, it would have said so. Both parties have referred to the legislative history, which is inconclusive and sparse. However, it does offer some support to respondent.

The language of section 503(b)(2) first appeared in section 3813(a), Internal Revenue Code of 1939, enacted in 1950 as section 331 of the Revenue Act of 1950. Section 3813(a) provided that tax-exempt organizations would lose their exemptions, and their contributors would lose their deductions, if the organizations engaged in certain prohibited transactions. It listed some types of organizations, "educational

---

[4] Sec. 1.170-2(b)(3), Income Tax Regs., provides, in part, as follows:

(3) *Educational organization and organizations for the benefit of certain State and municipal colleges and universities*—(i) *Educational organization.* An "educational organization" within the meaning of section 170(b)(1)(A) is one whose primary function is the presentation of formal instruction and which normally maintains a regular faculty and curriculum and normally has a regularly enrolled body of pupils or students in attendance at the place where its educational activities are regularly carried on. The term, therefore, includes institutions such as primary, secondary, preparatory, or high schools, and colleges and universities. It includes Federal, State, and other public-supported schools which otherwise come within the definition. It does not include organizations engaged in both educational and noneducational activities unless the latter are merely incidental to and growing out of the educational activities. A recognized university which incidentally operates a museum or sponsors concerts is an educational organization. However, the operation of a school by a museum does not necessarily qualify the museum as an educational organization. A gift to an educational institution through an alumni association or a class organization, which acts simply as a fund-raising or collection agency through which gifts may be made currently to the institution, is a gift to the educational organization if the entire gift inures to its benefit, but not if any part of it inures to the general or operating fund of the agency. Similarly, a gift to one or more educational institutions through an association of educational institutions will be considered a gift to the institutions if it inures entirely to their benefit.

organizations," religious and public organizations among them, to which the rule would not apply. These organizations were "not believed likely to become involved in any of these prohibited transactions." S. Rept. No. 2375, 81st Cong., 2d Sess. (1950), 1950–2 C.B. 511. In reference to the statutory language, the Senate report uses the phrases "schools and colleges with established faculties and student bodies in attendance," and "educational organizations with an enrolled student body in residence." *Id.* at 508, 511.

When the 1954 Code was enacted the language of section 3813(a) became part of section 503(b). Section 170, in allowing the additional 10-percent charitable deduction, made reference to the descriptive language of section 503(b)(2). The 1954 committee reports are virtually devoid of any discussion of "educational organizations." There is only one brief reference to "church, college, or hospital" in describing generally the types of donees under section 170(b)(1)(A). See S. Rept. No. 1622, 83d Cong., 2d Sess., p. 208 (1954).

Respondent relies mainly upon subsequent legislative history. In its report accompanying the Technical Amendments Act of 1958, the Senate Finance Committee noted that contributions to "churches, schools, and colleges, and hospitals" qualified for the 30-percent limit. And in 1964, Congress expanded the coverage of the 30-percent limitation. The House Ways and Means Committee described the then existing statute as covering "churches, schools, hospitals, certain medical research organizations, and certain organizations affiliated with State colleges or universities." It said that the problem with the then existing statute was that "many cultural and educational organizations and major charitable organizations [are] not now eligible for the 30 percent deduction." The new provision was intended to make the 30-percent limit—

available generally in the case of charitable contributions to religious, charitable, scientific, literary, or educational organizations or those for the prevention of cruelty to children or animals (which otherwise meet the conditions set forth in sec. 170(c)(2) of the code). In additon, the 30-percent deduction is to be available for charitable contributions to a Federal, State, or local government unit if the contribution or gift is made for exclusively public purposes.

\*      \*      \*      \*      \*      \*      \*

Types of organizations which generally will in the future qualify for this additional 10-percent deduction are those publicly or governmentally supported museums of history, art, or science, libraries, community centers to promote the arts, organizations providing facilities for the support of an opera, symphony orchestra, ballet, or repertory drama, and organizations such as the American Red Cross, United Givers Fund, etc. [H. Rept. No. 749, 88th Cong., 1st Sess. (1964), 1964–1 C.B. (Part 2) 177.]

Our view of the legislative history is that the congressional committee reports of 1950 and 1954 are not inconsistent with respondent's

regulation, but offer no active support of it. The subsequent legislative comments in 1958 and 1964 are no reliable guide to the intended coverage of the 1950 and 1954 enactments, but they at least express the opinion that the then existing language of section 503(b)(2) could not reach very far, if at all, beyond schools, colleges, and universities in its coverage. We think the legislative history tends to show that the regulation is neither unreasonable nor plainly inconsistent with the statutory language. That is sufficient to sustain its validity. *Commissioner* v. *South Texas Lumber Co.*, 333 U.S. 496 (1948) ; *Regal, Inc.*, 53 T.C. 261 (1969) ; *Ronald F. Weiszmann*, 52 T.C. 1106 (1969).

Alternatively, petitioner contends that even if the museum is not itself an "educational organization," it is nonetheless an integral part of an educational organization operated by the City of San Francisco. He relies specifically upon Rev. Rul. 55–453, 1955–2 C.B. 54, which states that—

Contributions to Federal, State, or local governments, for the expansion, development or creation of educational organizations or hospitals which are instrumentalities of such governments, will qualify for the additional deduction of 10 percent * * *

Respondent appears to concede that the city school system is an "educational organization" within the meaning of section 503(b)(2), but makes the curious argument that gifts to political subdivisions qualify only under the broader language of the 1964 amendments. This fails to meet the thrust of petitioners' argument; and we are of the opinion that petitioners' gift does in fact fall within the scope of section 503 (b)(2) and Rev. Rul. 55–453, *supra.*

Petitioner has shown that the museum is in operation an important part of the city school system. The museum operates a school of its own for both adults and children. Its facilities are readily available to, and widely utilized by, the city school district and neighboring school systems. Judging by attendance figures, it appears that all or most of the school children of San Francisco visit the museum one or more times in the course of their formal education. The museum and the school district cooperate in the Biennial Exhibition of Children's Art at the museum. The museum's exhibits and staff are frequently loaned to individual classes throughout the city school system. The museum is thus an integral part of the city school system, to the extent that a gift to the City and the museum can fairly be said to be a gift to the City for the expansion and development of its educational organization.

Given these facts, it is not important that the museum facility is also open to the general public for its own informal self-education. Respondent has never contended that every qualifying gift or facility

must itself be used *primarily* for formal instruction; it has been sufficient that it merely facilitates an educational organization in that undertaking. See Rev. Rul. 63–209, 1963–2 C.B. 469 (a convent housing parochial teachers qualifies under sections 4057(a), 4221(a), and 4294(a) as a section 503(b)(2) educational organization); Rev. Rul. 56–133, 1956–1 C.B. 559 (student government association exempt from section 6033 filing requirements); Rev. Rul. 64–276, 1964–2 C.B. 399 (Sunday school, sharing church facilities, is an educational organization for purposes of sections 4057(a), 4221(a), and 4294(a)). Indeed, it would seem contrary to the purposes of section 170(b)(1)(A)(ii) that a recipient educational facility such as the museum in these circumstances should be disqualified because the City made it generally available for informal public education instead of restricting it exclusively for the use of students. It would be ironic if the petitioners, wishing to make the collection available to all schools and persons, should be worse off than if they had given the collection to a single school.

Accordingly, we hold that the museum is in operation an integral part of and valuable adjunct to the San Francisco school system, so that the gift to the City for the use in the museum was a gift to the City for the expansion and development of its educational organization within the scope of section 170(b)(1)(A)(ii).

*Decision will be entered for the petitioners.*