T.C. Memo. 2017-178

UNITED STATES TAX COURT

DEAN RUSSELL CATES AND TERESA STINNETT CATES, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25934-14.                    Filed September 13, 2017.

Dean Russell Cates and Teresa Stinnett Cates, pro sese.

Brianna B. Taylor, John W. Sheffield, III, Ashley Y. Smith, and Madeline

Morgan (student), for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

ASHFORD, Judge: Respondent determined a deficiency of $22,500 in

petitioners' Federal income tax and an accuracy-related penalty pursuant to section

[*2] 6662(a) of $4,500 for the 2012 taxable year.[1]  The issues for decision are:

(1) whether petitioners were required to report as income the entire amount of a

$133,501 distribution received from a qualified retirement plan; (2) if so, whether

petitioners are liable for the 10% additional tax imposed by section 72(t) on early

distributions from a qualified retirement plan; (3) whether petitioners are entitled

to a deduction for unreimbursed employee business expenses not originally

claimed on their Federal income tax return for the year at issue; and (4) whether

petitioners are liable for the accuracy-related penalty.  We resolve all issues in

favor of respondent.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of

facts and the attached exhibits are incorporated herein by this reference.

Petitioners resided in Georgia at the time the petition was filed with the Court.

Teresa Stinnett Cates (petitioner) is a college graduate, having received a

bachelor's degree in finance from the University of Tennessee.  During 2012

petitioner worked for two different insurance companies.  From 2004 to March or

April 2012 she was employed at FCCI Insurance Group (FCCI) as a marketing

---

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect for the year at issue, and all Rule references are to the Tax
Court Rules of Practice and Procedure.

[*3] underwriter; starting in April 2012 she was employed at Harleysville Insurance Co. (Harleysville) as a commercial lines territory manager. Shortly after joining Harleysville, petitioner enrolled in a master of business administration (M.B.A.) program at Walden University. At the time of trial she was still finishing that program despite having left Harleysville a little over a year after joining that company to work for Selective Insurance Co., her then-current employer.

Petitioner was a participant in FCCI's section 401(k) profit-sharing plan, which was administered by Vanguard Fiduciary Trust Co. (Vanguard). It is undisputed that petitioner received a distribution of $133,501 from Vanguard during 2012. As of the close of that year petitioner was under 59½ years of age.

Vanguard sent the Internal Revenue Service (IRS) and petitioner a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., for 2012, reflecting the $133,501 distribution as an early distribution with "no known exception". The form also reflected Federal tax withheld of $26,700.

Walden University sent the IRS and petitioner a Form 1098-T, Tuition Statement, for 2012, reflecting petitioner's student status as at least a half-time graduate student, zero payments received for qualified tuition and related expenses, and $11,357 billed for qualified tuition and related expenses.

[*4]    Petitioners prepared and timely filed their joint Form 1040, U.S. Individual Income Tax Return, for 2012 (joint return), reporting, as relevant here, receipt of the entire distribution from the Vanguard-administered plan.  Specifically, on line 16a of the joint return, petitioners reported $133,501 as the amount of "Pensions and annuities".  However, on line 16b they reported $83,501 as the "Taxable amount", and they included that amount in taxable income.

Petitioners attached to the joint return Form 5329, Additional Taxes on Qualified Plans (including IRAs) and Other Tax-Favored Accounts.  In part I of the form they reported (1) the $83,501 amount as "Early distributions included in income"; (2) $9,300 thereof as "not subject to the [10%] additional tax" imposed by section 72(t) because of exception "10" (distributions due to an IRS levy on the qualified retirement plan); (3) $74,201 as the amount subject to the 10% additional tax; and (4) $7,420 as the amount of the 10% additional tax.  Petitioners also reported the $7,420 amount on line 58 in the section for "Other Taxes" on the joint return.

Petitioners also attached to the joint return a Schedule A, Itemized Deductions, on which they reported, among other items, $2,778 of unreimbursed employee business expenses.  However, because this reported amount did not exceed 2% of their adjusted gross income, they were unable to deduct these

[*5] expenses. Finally, petitioners neither reported on line 34 of the joint return any amount for "Tuition and fees" nor attached to the joint return Form 8917, Tuition and Fees Deduction.

Relying on the Vanguard Form 1099-R, respondent sent petitioners a notice of deficiency on October 14, 2014, determining that the entire amount of the $133,501 distribution was taxable and subject to the section 72(t) 10% additional tax and that they were liable for the substantial understatement of income tax penalty under section 6662(a) and (b)(2).

On October 31, 2014, petitioners timely petitioned this Court for redetermination of the deficiency and the penalty, contending that $50,000 of the $133,501 distribution was nontaxable because those funds were (1) rolled over to a new section 401(k) plan and (2) used for educational expenses.

At a time not established by the record after petitioning this Court but before trial of this case, petitioners submitted to respondent a revised joint return, which they signed and dated June 2, 2015. As relevant here, petitioners reported on line 16b of this form that $108,501 of the $133,501 distribution was taxable. In addition, they claimed on this form an increased deduction for additional unspecified Schedule A expenses. Then at a later time also not established by the record but before trial of this case, petitioners submitted to respondent a joint

[*6] Form 1040X, Amended U.S. Individual Income Tax Return, for 2012, which they signed but did not date. This form reflects adjusted gross income that includes the entire $133,501 distribution as taxable and an additional Schedule A itemized deduction of $9,498.

OPINION

I.    Burden of Proof

In general, the determinations of the Commissioner in a notice of deficiency are presumed correct and, except for the burden of production in any court proceeding with respect to a taxpayer's liability for any "penalty, addition to tax, or additional amount", see sec. 7491(c), the taxpayer bears the burden of proving that the Commissioner's determinations are erroneous, see Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). This burden of production and proof remains on the taxpayer even with respect to the additional tax under section 72(t) because the section 72(t) additional tax is a "tax" and not a "penalty, addition to tax, or additional amount" within the meaning of section 7491(c). See El v. Commissioner, 144 T.C. 140, 148 (2015) (citing Ross v. Commissioner, T.C. Memo. 1995-599, 1995 Tax Ct. Memo LEXIS 597, at *16-*20).

Under section 6201(d), if a taxpayer asserts a reasonable dispute with respect to an item of income reported on an information return filed by a third party

**[*7]** (e.g., a Form 1099-R) and the taxpayer meets certain other requirements, the Commissioner bears the burden of producing reasonable and probative evidence, in addition to the information return, concerning the portion of the deficiency attributable to the income item. Petitioners have not raised any dispute with respect to the accuracy of the Form 1099-R that Vanguard sent the IRS and petitioner for 2012, nor do they contend that they have met the other requirements under section 6201(d). Accordingly, the burden of production with respect to the income in this case does not shift to respondent under section 6201(d).

Petitioners do not contend that the burden of proof should shift to respondent under section 7491(a)(1), nor have they established that the requirements for shifting the burden of proof under section 7491(a)(2) have been met. Accordingly, the burden of proof with respect to the income and the section 72(t) additional tax also remains on petitioners.

II. Taxability of Retirement Distribution

Section 402(a) provides that "any amount actually distributed to any distributee by any employees' trust described in section 401(a) which is exempt from tax under section 501(a) shall be taxable to the distributee, in the taxable year of the distributee in which distributed, under section 72 (relating to annuities)." It is undisputed that petitioner received a distribution of $133,501 in 2012 from the

[*8] Vanguard-administered plan, a qualified retirement plan. Accordingly, the entire distribution is taxable to petitioners unless some exclusion applies.

Petitioners contend that $25,000 of the $133,501 distribution is nontaxable because that amount should be reflected as a rollover to the Nationwide Savings Plan, which was administered by Charles Schwab for Nationwide Insurance Co. (Nationwide), the company into which Harleysville merged shortly after petitioner joined Harleysville. Section 402(c)(1) provides a "rollover" exception to the section 402(a) general rule; under section 402(c)(1), any portion of an "eligible rollover distribution" (as defined in section 402(c)(4)) that is paid to an employee and which the employee transfers to an "eligible retirement plan" (as defined in section 402(c)(8)(B)) is excluded from gross income for the taxable year in which the distribution is paid. However, this rollover exception is not available for "any transfer of a distribution made after the 60th day following the day on which the distributee received the property distributed." Sec. 402(c)(3); sec. 1.402(c)-2, Q&A-11, Income Tax Regs. Thus, to avail themselves of the rollover exception, petitioners must show that some portion of the $133,501 distribution was transferred, within 60 days of petitioner's receipt of the distribution, to another eligible retirement plan.

**[*9]**  Petitioner asserted at trial that $25,000 of the $133,501 distribution was "set aside specifically for * * * [a] rollover" but acknowledged that the proper paperwork was not actually completed to reflect a rollover of this amount into the Nationwide Savings Plan; according to petitioner, this failure occurred because of Harleysville's merger into Nationwide.  Consequently, as evidence that this rollover occurred, she instead pointed to documentation in the record from Vanguard showing that as of April 16, 2012, her vested balance in FCCI's section 401(k) profit-sharing plan was $140,211.24 and from Nationwide showing that as of September 30, 2014, her vested balance in the Nationwide Savings Plan was $24,531.66.  This documentation does not establish that petitioner rolled over $25,000 (or any other amount) to a Nationwide qualified retirement plan, much less that a rollover was effected within 60 days of her receipt of the $133,501 distribution from the Vanguard-administered plan.  Accordingly, the entire $133,501 distribution is includable in petitioners' gross income for 2012.

III.    Additional Tax Under Section 72(t)

Section 72(t) imposes an additional 10% tax on early distributions from a qualified retirement plan.  See sec. 72(t)(1).  The additional 10% percent tax, however, does not apply to certain enumerated distributions.  See sec. 72(t)(2).  As relevant here, the additional 10% tax does not apply to the extent that early

**[*10]** distributions are used for qualified higher education expenses of the taxpayer in the year of the early distributions. <u>See</u> sec. 72(t)(2)(E). Qualified higher education expenses generally include expenses for tuition, fees, books, supplies, and equipment and, in limited circumstances, room and board. <u>See</u> secs. 72(t)(7)(A), 529(e)(3).

Petitioner suggested at trial that $25,000 of the $133,501 distribution qualifies for this exception because that amount was used to pay expenses related to the M.B.A. program she was enrolled in at Walden University in 2012. However, there is no evidence in the record that petitioners in fact made any tuition and related payments to Walden University in 2012 for petitioner's M.B.A. studies there. The Form 1098-T that Walden University sent the IRS and petitioner for 2012 shows only amounts "billed" for qualified tuition and related expenses. Indeed, the form also shows that zero payments were received for qualified tuition and related expenses. Without some documentation to support petitioner's vague testimony, we cannot conclude that she used any portion of the $133,501 distribution she received from the Vanguard-administered plan to pay M.B.A. expenses or that the expenses, even if paid, are qualified higher education expenses within the meaning of sections 72(t)(7)(A) and 529(e)(3). On the record before us, we find that none of the enumerated statutory exceptions applies here,

**[*11]** and thus petitioner's entire $133,501 distribution is subject to the section 72(t) additional tax.

IV.    Schedule A Unreimbursed Employee Business Expenses

Tax deductions are a matter of legislative grace and are allowable only as specifically provided by statute.  See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Section 262 expressly denies a deduction for "personal, living, or family expenses."  On the other hand, under section 162, a taxpayer may deduct unreimbursed employee business expenses as an ordinary and necessary business expense.  Lucas v. Commissioner, 79 T.C. 1, 6 (1982); Primuth v. Commissioner, 54 T.C. 374, 377 (1970).  Whether an expense is deductible under section 162 is a question of fact, and the taxpayer must demonstrate that the purpose of the expense was primarily business rather than personal and that the business in which the taxpayer is engaged benefited or was intended to be benefited by the expense. Hynes v. Commissioner, 74 T.C. 1266, 1289 (1980); Chapman v. Commissioner, 48 T.C. 358 (1967).  Section 1.162-5(a), Income Tax Regs., provides that a taxpayer may deduct educational expenses as ordinary and necessary business expenses if the education (1) maintains or improves skills required by the individual in his or her employment or other trade or business or (2) meets the

**[*12]** express requirements of the individual's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the individual of an established employment relationship, status, or rate of compensation. A taxpayer may not deduct any expenses under section 162 to the extent that the taxpayer is entitled to (but does not claim) reimbursement from his or her employer for expenditures related to his or her status as an employee. Lucas v. Commissioner, 79 T.C. at 7. In this regard, such expenses are not considered "necessary". Orvis v. Commissioner, 788 F.2d 1406, 1408 (9th Cir. 1986), aff'g T.C. Memo. 1984-533; Podems v. Commissioner, 24 T.C. 21, 22-23 (1955).

Petitioner at trial contended that petitioners should be allowed a deduction for various unreimbursed employee business expenses, to wit, tuition and related expenses to Walden University, dues for professional membership organizations, and travel (including vehicle and meals and entertainment) expenses. Petitioner testified that these expenses related to her employment with either FCCI or Harleysville, with the bulk of them associated with her employment with FCCI. She further testified that these expenses were not "reimbursable" or "reimbursed". However, petitioners did not produce a copy of Harleysville's reimbursement policy despite petitioner's acknowledging at trial that Harleysville had such a policy. They did produce and introduce into the record a copy of the employee

**[*13]** handbook of FCCI. However, that handbook states that FCCI will reimburse employees for business travel (including lodging, meal, and transportation charges) and registration or tuition fees for educational conferences, conventions, and training seminars (subject to prior supervisory approval of those fees). The handbook also states that FCCI will pay for salaried employees' membership in professional organizations so long as the organization is relevant to the employee's current FCCI job, the employee has been employed with FCCI for 90 days, and the employee obtains supervisory approval of membership in the organization. The handbook further states that subject to certain time in service and employee performance conditions, FCCI will reimburse an employee up to $5,250 per year for the cost of a college education program (including an M.B.A. program) at a regionally accredited educational institution at the conclusion of a successfully completed course.

Petitioners have failed to show the Court why petitioner's expenses are necessary when it seems, contrary to what she may have believed, that she in fact could have sought reimbursement for them. Although her testimony also implies

**[\*14]** that she may have sought reimbursement for some of the expenses but was denied, petitioners did not produce any supporting documentation to that effect.[2]

Because petitioner's general testimony alone is insufficient to prove that petitioners are entitled to a deduction for her unreimbursed employee business expenses, we find in favor of respondent on this issue.

## V. Accuracy-Related Penalty Under Section 6662(a)

We now address whether petitioners are liable under section 6662(a) and (b)(2) for an accuracy-related penalty on an underpayment due to a substantial understatement of income tax.

Section 6662(a) imposes a 20% accuracy-related penalty on any portion of an underpayment of tax required to be shown on a return if, as provided by section 6662(b)(2), the underpayment is attributable to any substantial understatement of income tax. The term "substantial understatement" means an understatement of income tax that exceeds the greater of 10% of the tax required to be shown on the

---

[2]Furthermore, as to the tuition and related expenses to Walden University, petitioner's testimony was such that these expenses would not meet the deductibility requirements under sec. 1.162-5(a), Income Tax Regs., and as indicated supra p. 10, there is no evidence in the record that petitioners actually made any tuition and related payments to Walden University in any event. Neither have petitioners produced adequate substantiation of petitioner's travel expenses. See sec. 274(d); sec. 1.274-5(c)(2)(iii), Income Tax Regs.; sec. 1.274-5T, Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

[*15] return or $5,000. Sec. 6662(d)(1)(A). The Commissioner bears the burden of production regarding a taxpayer's liability for the accuracy-related penalty and thus is required to come forward with sufficient evidence indicating that imposition of the penalty is appropriate. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once the Commissioner meets his burden of production, the taxpayer bears the burden of proving, through persuasive evidence, that the Commissioner's penalty determination is incorrect. See Rule 142(a); Welch v. Helvering, 290 U.S. at 115; Higbee v. Commissioner, 116 T.C. at 447. Respondent has discharged his burden of production by providing sufficient evidence showing that petitioners' understatement of income tax for 2012 exceeds the greater of 10% of the tax that was required to be shown on the joint return or $5,000.

Application of the accuracy-related penalty may be avoided with respect to any portion of an underpayment if it is shown there was reasonable cause for such portion and the taxpayer acted in good faith with respect to such portion. Sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. at 446-447. The determination of whether the taxpayer had reasonable cause and acted in good faith depends upon the pertinent facts and circumstances of a particular case. Sec. 1.6664-4(b)(1), Income Tax Regs. We consider, among other factors, the

[*16] experience, education, and sophistication of the taxpayer; however, the principal consideration is the extent of the taxpayer's efforts to assess the proper tax liability.  Id.; see also Higbee v. Commissioner, 116 T.C. at 448.  Taking into consideration the taxpayer's experience, education, and sophistication, an honest misunderstanding of fact or law may indicate reasonable cause and good faith. Higbee v. Commissioner, 116 T.C. at 449 (citing Remy v. Commissioner, T.C. Memo. 1997-72).  In addition, reliance on professional advice may indicate reasonable cause and good faith if, in the light of all the facts and circumstances, such reliance was reasonable and the taxpayer acted in good faith.  Id. at 448-449.

At trial petitioner, who has a bachelor's degree in finance and is pursuing her M.B.A., appeared sincere but confused, particularly about the tax treatment of the $133,501 distribution she admitted receiving from the Vanguard-administered plan in 2012.[3]  Petitioner stated that petitioners did "consult" with an accountant in preparing the joint return.  This statement alone, however, is insufficient evidence as to the application of the accuracy-related penalty, including that they had reasonable cause and good faith.  Because the underpayment was by definition substantial, we will sustain the penalty.

---

[3]Dean Russell Cates did not appear at trial.

**[*17]**  We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.