MILDRED MILLER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Miller v. Commissioner
Docket No. 9205-77.
United States Tax Court
T.C. Memo 1980-136; 1980 Tax Ct. Memo LEXIS 450; 40 T.C.M. (CCH) 243; T.C.M. (RIA) 80136; April 23, 1980, Filed *450 Held, the deductibility of certain expenditures under secs. 162(a) and 274(d), I.R.C. 1954, determined; held, further, the deductibility of certain itemized deductions determined; held, further, P is liable for the self-employment tax under sec. 1401, I.R.C. 1954. Mildred Miller, pro se. Darwin Thomas, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined a deficiency of $4,793.00 in the petitioner's Federal income tax for 1974. The issues for decision are: (1) Whether certain expenditures are deductible under sections 162(a) and 274(d) of the Internal Revenue Code *452 of 1954[1]; (2) whether the petitioner is entitled to certain itemized deductions; and (3) whether the petitioner is liable for the self-employment tax under section 1401.
FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioner, Mildred Miller, maintained her legal address in Los Angeles, Calif., at the time she filed her petition in this case. She filed her individual Federal income tax return for 1974 with the Internal Revenue Service. During the year in issue, the petitioner conducted her own market research business. As part of her market research activities, she became involved in establishing a "women's bank" for a group of women who hired her to perform the necessary tasks in organizing the bank. She began such work in 1973 when she did a market research study concerning the issuance of a charter for the proposed bank.Her duties included preparing an application for a bank charter, interviewing women to serve on the bank's board of directors, and obtaining investors in the bank. She also organized a convention *453 in Anaheim, Calif., for women interested in the project, and she hosted and paid for two parties for the bank. One party, given in January 1974, was for potential investors; the other party, in February of that year, involved the city council and community leaders of the town for which the bank was planned. The petitioner paid $364.19 to four individuals who helped her with various aspects of both parties. As part of her efforts to promote interest in the women's bank, the petitioner appeared on television and radio programs. She was assisted in such efforts by Betty Gray, who arranged interviews for the petitioner and wrote newspaper releases and letters. She paid Ms. Gray $625 for her services. The petitioner also expended $296.35 during 1974 in payments to various news periodicals and services as part of her advertising. The petitioner filed an application for a bank charter for the women's bank in 1973; however, the charter was denied sometime in October or November 1974.The petitioner received $11,000 as compensation for her work in organizing the bank, and she included such amount in the total $29,300 of income which she reported for 1974. The petitioner joined *454 various groups and organizations to meet people and thereby promote her work in organizing the women's bank. She served on the board of directors and was vice president of the Elizabeth Fry Center, a halfway house for girls coming out of prison. She also helped the center raise money through various fund-raising projects, but she was not paid for her services. She resigned from the center after the bank's charter was refused. She also belonged to the Film Welfare League, a nonprofit organization concerned with promoting general audience films. The petitioner went to New York to look into the purchase of a movie studio for that organization, but the purchase never materialized. The petitioner was not paid for her services for the Film Welfare League, but she had been promised a finder's fee by the league if it purchased the studio. The petitioner also purchased 20,000 shares of stock in Tri-State Petroleum Corp. (Tri-State), a Nevada corporation. She then employed two people, Rudolph Minoot and Milton Pilot, to help her sell the stock to other people. She paid the men on a percentage basis a total of $3,290 during 1974 for their services. The purchase of the Tri-State stock *455 was the only stock transaction in which she was involved during 1974. During the year in issue, the petitioner organized a convention for Arab-American businessmen. She paid some of the expenses of the convention, and although she received no compensation for her efforts, she hoped to derive a profit if the convention were successful. As things developed, she incurred a loss from her endeavors. During 1974, the petitioner rented a penthouse apartment in Beverly Hills, which served as her business office. The apartment had a living room, two bedrooms, two baths, a lanai, and a small kitchen. One of the bedrooms was fixed as a study, and the other had twin beds in it. The petitioner kept her bed in one corner of the lanai, kept her clothes in a closet in the apartment, slept in the apartment most of the time, had her morning coffee there, and if she were not out, she also ate her meals there. Some of the petitioner's business associates and helpers also stayed overnight at the apartment. One of the petitoner's workers was a 72-year-old woman who was often afraid to go home at night, and on occasion, she stayed at the apartment 3 to 4 days at a time. Messrs. Minoot and Pilot *456 also stayed there while they helped the petitioner sell the Tri-State stock. At the apartment, the petitioner conducted her business dealings for the women's bank, including interviewing women to serve on the board of directors of the bank and holding meetings involving the bank. Ms. Gray also furnished her services there. The petitioner also conducted some of her volunteer work for the Elizabeth Fry Center at the apartment. The petitioner took several trips in connection with her activities during 1974. She took a trip to Albuquerque, N. Mex., to speak to a couple about doing a market research survey for them. She traveled to San Francisco numerous times, including once to speak to someone about the charter for the women's bank, and once to make plans for the Arab-American convention. She also flew to Reno, Nev., to speak to an attorney for Tri-State about her stock in that corporation. On her 1974 Federal income tax return, among other business expenses, the petitioner claimed deductions for $6,000 as rent for the penthouse apartment, $3,840 as commissions, [2] $1,607 for travel, $2,100 for entertainment (which included amounts she expended for the bank, the Arab-American *457 convention, and various dinners and lunches), and $800 for advertising and public relations.The petitioner also claimed a total of $4,791 as itemized deductions, which included $2,664 for charitable contributions, $787 for medical expenses, $656 for interest, and $126 for repairs to a house. The petitioner's children lived in the house, which belonged to a third party. The owner paid the taxes on it; the petitioner did not pay rent for the house, but she agreed with the owner to pay for its upkeep and repairs. The charitable contributions included $125 that the petitioner paid to Vera Tibbs, a religious science practitioner. She sought the help of Ms. Tibbs regarding her work with the women's bank. Ms. Tibbs gave the petitioner counseling and guidance of a spiritual nature. In his notice of deficiency, the Commissioner disallowed $14,347 of the business expenses claimed by the petitioner. He also disallowed all her itemized deductions on the ground that they were not substantiated, and in lieu thereof, *458 he allowed her the $2,000 standard deduction. In addition, the Commissioner determined that the petitioner was liable for the self-employment tax under section 1401. OPINION The first issue in this case involves the deductibility of certain expenditures under sections 162(a) and 274(d). Section 162(a) provides that "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Whether expenditures re ordinary and necessary is a question of fact ( Commissioner v. Heininger,320 U.S. 467 (1943)), and the petitioner has the burden of demonstrating that the purpose of the expenditure was primarily business, rather than social or personal, and that the business in which the taxpayer is engaged benefitted, or was intended to be benefitted, by the expenditure. Chapman v. Commissioner,48 T.C. 358 (1967); Bennett's Travel Bureau, Inc. v. Commissioner,29 T.C. 350 (1957). In deciding this issue, we first consider the petitioner's deductions for *459 travel and entertainment, which are subject to the additional restrictions of section 274(d).Such section provides in part: (d) Substantiation Required.--No deduction shall be allowed-- (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home), (2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, or * * *
unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility * * *, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility * * * [Emphasis added.] Under this provision, a taxpayer must substantiate every expenditure claimed as a deduction by either "adequate records" or other "sufficient *460 evidence," and any such expenditures not thus substantiated will be disallowed in full. Sanford v. Commissioner, 50 T.C. 823, 828 (1968), affd. per curiam 412 F. 2d 201 (2d Cir. 1969), cert. denied 396 U.S. 841 (1969). Section 1.274-5(c)(2), Income Tax Regs., describes "adequate records" as consisting of "An account book, diary, statement of expense or similar record * * * made at or near the time of the expenditure," and "documentary evidence * * * [such as bills or receipts] which, in combination, are sufficient to establish each element of an expenditure." In the absence of such records, "the taxpayer may alternatively satisfy the substantiation requirements by coming forward with 'corroborative evidence sufficient' to support his own statement containing specific information in detail as to each element of the expenditure, or such elements as have not been substantiated by adequate records." Sanford v. Commissioner, 50 T.C. at 829; sec. 1.274-5(c)(3), Income Tax Regs. *461 Moreover, the petitioner has the burden of proving that her expenditures are deductible under section 274(d). Sanford v. Commissioner, 50 T.C. at 826. The petitioner argues that her travel and entertainment expenses were incurred as a part of her work in organizing a women's bank, in conducting her market research business, and in promoting her general business activities and contacts. The Commissioner takes the position that the petitioner has failed to demonstrate that such expenditures represented ordinary and necessary expenses incurred in carrying on her trade or business, and that in any event, such deductions must be disallowed because of her failure to comply with the substantiation requirements of section 274(d) and the regulations thereunder. In reaching our decision regarding the petitioner's travel and entertainment expenditures, we need not consider the trade or business question because for the most part, the petitioner has not met the substantiation requirements of section 274(d) with respect to such expenditures. We have found that the petitioner paid $364.19 to four individuals who helped with the two parties for the bank. We have also found *462 that the petitioner, as a part of her business, was engaged to assist in securing the charter for the women's bank, and we are satisfied that the expenses incurred by her in holding such parties were related to such business activity and meet the test of deductibility under section 162(a). Moreover, such payments were substantiated by checks, and the petitioner's testimony with respect to such payments was relatively specific as to the amount she paid, to whom, and for what purpose. Thus, such payments have been substantiated as required by section 274(d), and we hold that they are deductible. As to the petitioner's other expenditures for travel and entertainment, she offered only relatively vague testimony that she flew to various cities and entertained her business associates on various occasions; she failed to present any evidence which establishes the amount, time, or place of her expenditures. She presented no account book, diary, statement of expense, or similar record corroborating her testimony, as required by the statute. Bradley v. Commissioner, 57 T.C. 1, 9 (1971). The substantiation requirements of section 274(d) require detailed recordkeeping, and *463 the petitioner's testimony is insufficient, standing by itself, to support a deduction under such section since "it was the intention of Congress that no deduction should be allowed solely on the basis of a taxpayer's unsupported self-serving testimony." AshbyV. Commissioner, 50 T.C. 409, 415 (1968). Moreover, there does not appear to be any valid reason why the petitioner failed to keep the substantiation necessary to deduct her expenditures. Sanford v. Commissioner, 50 T.C. at 830. Therefore, "the record falls woefully short of meeting the substantiation requirements of section 274(d) of the Code." Bradley v. Commissioner, supra at 10. In the absence of any such evidence, we must hold that the petitioner has not carried her burden of proving that her expenditures are deductible. Buddy Schoellkopf Products, Inc. v. Commissioner, 65 T.C. 640, 660 (1975); Bradley v. Commissioner, supra at 10; Sanford v. Commissioner, supra at 826. Accordingly, except for the $364.19 which the petitioner paid in connection with the parties for the bank, we hold that she is not *464 entitled to deduct the amounts which she claimed for business travel and entertainment. We next consider those business expenses deducted by the petitioner which are not subject to section 274(d) but which must satisfy the requirement of section 162(a) that they are ordinary and necessary expenses incurred in carrying on a trade or business. The petitioner deducted the payments which she made to Messrs. Minoot and Pilot for selling her Tri-State stock as such an expense. Commissions paid on the sales of securities are deductible only by dealers in securities. Traders and investors in securities must treat selling commissions as an offset against the selling price. Spreckels v. Helvering, 315 U.S. 626 (1942). Although the petitioner stated that she purchased the Tri-State stock for re-sale and intended to make a profit on it, her actions do not constitute carrying on the trade or business of selling securities. Indeed, she was not, by her own characterization of her activities, a trader or dealer in securities. The petitioner was a mere investor. Therefore, the "commissions" paid by her are not deductible as a business expense. Such payments should have been *465 treated as an offset against the selling price of the securities. The petitioner also deducted as business expenses the $625.00 that she paid to Betty Gray, who performed promotional services for her, and the $296.35 that she paid to various news periodicals and services. The petitioner testified that the services Ms. Gray performed were in relation to her work for the proposed women's bank. We believe the petitioner's testimony on this matter, for she has established to our satisfaction that her work with the bank was extensive and was a business endeavor. Part of the work undoubtedly included extensive promotional activities to gather support for her efforts. Therefore, we hold that the petitioner is entitled to a deduction for such payment. We also hold that she is entitled to a deduction for the payments which she made to various news services since the Commissioner conceded that such payments are deductible if we found, as we have, that her endeavors in organizing the women's bank constituted part of her trade or business. We next consider whether the petitioner is entitled to a deduction under section 162 for any of the rent of her penthouse apartment. She insisted *466 that "the whole thing" is used exclusively for business purposes, but she admitted that she slept in the apartment on a regular basis and kept her clothes there. Since she lived in the apartment and often allowed her employees and associates to stay there for convenience, the apartment constituted a residence, even though it may not have been her exclusive residence, and the expenses of maintaining a residence are not deductible under section 262. However, section 1.262-1(b)(3), Income Tax Regs., provides that where a taxpayer uses a portion of her residence as her place of business, then "such portion of the rent and other similar expenses as is properly attributable to such place of business is deductible as a business expense." The petitioner has the burden of proving that she is entitled to any such deduction. Rockwellv. Commissioner, 512 F. 2d 882, 886 (9th Cir. 1975), affg. a Memorandum Opinion of this Court, cert. denied 423 U.S. 1015 (1975). We must hold that the petitioner has not met her burden. She presented no evidence *467 regarding what portion of the apartment was used for her business. Indeed, when asked by the Court to make some estimation in this regard and warned that her failure to do so could result in a denial of the entire deduction, she refused to do so. Therefore, we are forced to deny in full her claimed deduction for the rent of the apartment. Grover v. Commissioner, 68 T.C. 598, 603 (1977). The second issue to be considered is whether the petitioner is entitled to various itemized deductions. The petitioner also has the burden of proof regarding these deductions. Rule 142, Tax Court Rules of Practice and Procedure; Welch v. Helvering, 290 U.S. 111 (1933). The petitioner deducted $2,664 as charitable contributions, and she listed as the recipients of such contributions the Church of Religious Science, the Elizabeth Fry Center, and miscellaneous charity dinners. The Commissioner has agreed that she is entitled to a charitable deduction of $311.20. The petitioner testified that her total charitable contributions included $125 that she paid to Ms. Tibbs, *468 a religious science practitioner. However, a payment to a private individual does not constitute a charitable contribution as defined in section 170(c). See also Dohrmannv. Commissioner, 18 B.T.A. 66 (1929). In her brief, the petitioner also suggests that the payment to Ms. Tibbs represented a medical expense.Although the petitioner was vague regarding the services that Ms. Tibbs performed for her, she did state that Ms. Tibbs "merely * * * [tried] to clear my mind of negative thinking" and performed other counseling of a sort. It is well established that payments for spiritual guidance or counseling do not constitute medical expenditures deductible under section 213. Brown v. Commissioner, 62 T.C. 551 (1974), affd. per curiam 523 F. 2d 365 (8th Cir. 1975); Ring v. Commissioner, 23 T.C. 950 (1955). Accordingly, the petitioner is not entitled to either a charitable or medical expense deduction for her payment to Ms. Tibbs, and we hold that she has failed to prove that she is entitled to a deduction for charitable *469 contributions in excess of that allowed by the Commissioner since she presented no evidence on this issue except her vague testimony. The petitioner also deducted $787.00 for medical expenses. The Commissioner has conceded that she is entitled to $691.50 of that amount. Since she presented no evidence on this issue, we must hold that she is not entitled to a deduction for medical expenses in excess of that conceded by the Commissioner. The petitioner deducted $656 as interest paid during 1974 on an auto loan with the Bank of America and on her Master Charge and American Express accounts. The Commissioner conceded that she is entitled to $226 for interest payments to Master Charge during 1974.With respect to the interest on her auto loan, the petitioner testified that she calculated the deduction claimed by her by prorating the total interest on the loan over the entire period of the loan. We are satisfied and hold that she is entitled at least to the amount claimed by her as interest on the auto loan. However, we disallow the remaining interest deduction since she presented no further evidence on the issue. The last itemized deduction claimed by the petitioner was $126 *470 for repairs to the house in which her children lived. The petitioner's testimony reveals that such expense was nothing more than a personal living expense, which is not deductible under section 262. Accordingly, we sustain the Commissioner's disallowance of that deduction. Since the itemized deductions to which the petitioner is entitled are less than the standard deduction, she should be allowed the standard deduction in computing the amount of the deficiency under Rule 1558 Tax Court Rules of Practice and Procedure.
The last issue to be considered is whether the petitioner is liable for the self-employment tax under section 1401. The petitioner also has the burden of proof on this issue, and we must conclude that she has not met her burden since she offered no evidence to refute the Commissioner's determination. Accordingly, we hold that the petitioner is liable for the self-employment tax as determined by the Commissioner. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the year in issue.↩
2. Although the petitioner deducted $3,840 as commissions, the parties agree that the petitioner expended only $3,290 as commissions for the sale of the Tri-State stock.↩