AMERICAN NEW COVENANT CHURCH, PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3122–78X.     Filed May 19, 1980.

*Peter R. Stromer,* for the petitioner.
*James J. McGovern,* for the respondent.

OPINION

DAWSON, *Judge:* This case was assigned to Special Trial Judge
Francis J. Cantrel for the purpose of conducting the hearing and
ruling on respondent's motion to dismiss for lack of jurisdiction.
After a review of the record, we agree with and adopt his
opinion which is set forth below.[1]

---

[1]Since this is a preliminary jurisdictional motion, the Court has concluded that the post-trial
procedures of Rule 182, Tax Court Rules of Practice and Procedure, are not applicable in the

## OPINION OF THE SPECIAL TRIAL JUDGE

CANTREL, *Special Trial Judge:* Petitioner, challenging an adverse determination issued by respondent, attempts to invoke the jurisdiction of this Court pursuant to section 7428,[2] for a declaratory judgment that it is entitled to exemption from Federal income taxes under section 501(c)(3). Respondent filed a "Motion to Dismiss for Lack of Jurisdiction" on the ground that the petition for declaratory judgment was not filed by a proper party. Petitioner filed a memorandum of law in opposition to respondent's motion to dismiss, and a hearing was held thereon at the motions session in Washington, D.C.

On October 18, 1976, respondent received a Form 1023, "Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code" (referred to herein as Form 1023 or application), from "Life Science Church (Chapter 669)," an unincorporated entity formed by charter on December 30, 1975, with its address at 4125 Dillon Way, San Diego, Calif. The application was signed by Walter A. Stark (referred to herein as Stark), head of the board of trustees of the Life Science Church, Chapter 669 (hereinafter referred to as L.S.C.). Some of the answers to part III of the application, relating to the organization's programs, operations, services, and fundraising are either vague or incorrect. The only answers written in response to the questions in part V of the application relating to L.S.C.'s financial data were statements to the effect that the organization was new; that it had received no money to date and did not anticipate income in 1976; that it had no assets nor liabilities as of August 4, 1976; and that "these parameters [an analysis of financial support] have not yet been established." The charter of L.S.C. which accompanied the application reads, in pertinent part, as follows:

> This is to certify that Rev. Walter A. Stark D.D. of San Diego, Cal., is ordained and established as an Auxiliary Church, and is granted a Church Charter by the LIFE SCIENCE CHURCH to further the free exercise of Religion, upon the express agreement of the Trustees of the Church ordained

---

present circumstances. This conclusion is based on the authority of the "otherwise provided" language of that rule.

[2] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

and established by this Charter to the following terms and conditions; TO-WIT:

$$* \quad * \quad * \quad * \quad * \quad * \quad *$$

2. No other Churches or Orders may be formed by this Auxiliary Church, which shall remain unincorporated.

$$* \quad * \quad * \quad * \quad * \quad * \quad *$$

12. That the names and addresses of the Trustees shall at all times be filed with the Head Office of the Church at Bloomington, Minnesota.

13. That this Church organization is formed and organized exclusively for Religious, Charitable, Literary and Educational purposes within the meaning of section 501(c)(3) of the Internal Revenue Code of 1954.

$$* \quad * \quad * \quad * \quad * \quad * \quad *$$

17. Upon the Disolution [sic] of the Church, the Board of Trustees shall, after paying and disposing of all legal liabilities of the Church, dispose of all assets of the Church exclusively for the purposes of the Church in such manner and to such organization(s), organized and operated exclusively for charitable, educational, religious or scientific purposes which shall at the time qualify as an Exempt organization under 501(c)(3), of 26 U.S. Code, as the Board of Trustees shall determine. If there is any dispute as to the disposition of the assets, the property shall be returned to the donar [sic], grantor, or person conveying it to the Church. All property capable of being identified, shall be returned to the party that was the prior owner or his heirs, assigns, or trustees, if deceased.

$$* \quad * \quad * \quad * \quad * \quad * \quad *$$

23. This Charter is granted upon the further condition that the members of the Life Science Church are bound by oath or affirmation that they support the principles of the Life Science Church * * *

After respondent received the Form 1023 from L.S.C., correspondence by letter ensued to supplement the answers given in the application and to obtain the information necessary for respondent's administrative consideration of the application. On February 22, 1977, respondent received a letter from Stark responding to several questions asked by respondent in a previous letter. Therein Stark stated that the instrument governing his organization was the charter granted to it by its parent church, the Life Science Church, which is a division of the Basic Bible Church headquartered in Minneapolis, Minn. The letter further stated that "the correct and full name of the organization is the Life Science Church Chapter 669, which is exactly what we stated in our 1023 application." After approximately 9 months of administrative consideration by respondent of the application received from L.S.C., petitioner mailed respondent a letter on July 15, 1977, stating that it would like to change its name to "The New Covenant Church in America";

that this church had absolutely no affiliation with the Basic Bible Church of Minneapolis, Minn. (incorrectly called the Life Science Church), its officers, or directors; and that it was a completely separate and independent church. No charter or application Form 1023 relating to the New Covenant Church in America was forwarded with this letter.

Based upon the information in respondent's possession, consisting of an application, charter, supporting documents for an unincorporated organization entitled "Life Science Church (Chapter 669)," and a request to change the name of the entity, respondent issued a detailed proposed adverse ruling letter on August 9, 1977, to L.S.C., which reads in relevant part as follows:

> The information submitted discloses that you were formed on January 30, 1976,[3] under a Church Charter that was granted to you by the Life Science Church, whose Head Office is located in Bloomington, Minnesota. You said that your full name was the Life Science Church, Chapter 669. Under the Church Charter granted by the Life Science Church, you were established as an Auxiliary Church of that Church. Under the conditions set forth in this charter, which were agreed to by your trustees, no other churches could be formed by you.
>
> Your charter states that you were formed and organized exclusively for religious, charitable, literary and educational purposes within the meaning of section 501(c)(3) of the Code. Article 17, thereof, states, with respect to your remaining assets, that upon dissolution, if there is any dispute as to the disposition of the assets, the property shall be returned to the donor, grantor, or person conveying it to the church. Also, that all property capable of being identified shall be returned to the party that was the prior owner or his heirs, assigns, or trustees, if deceased.
>
> In addition, your charter provides that the names and addresses of your trustees shall at all times be filed with the Life Science Church at Bloomington, Minnesota. You stated that the Life Science Church, from whom you received your Church Charter, was chartered as a division of the Basic Bible Church of America, 101 West Groveland Avenue, Minneapolis, Minnesota.
>
> In your certified letter to us that was mailed on July 15, 1977, you stated: "We would at this time like to change the name of our church in our 1023 application to: The New Covenant Church in America." Also, in this letter, you stated that The New Covenant Church in America had absolutely NO affiliation with the Basic Bible Church of Minneapolis, Minnesota (incorrectly called the Life Science Church), its officers and/or directors, and, therefore, that you were a completely separate and independent church.

---

[3]The charter and application Form 1023 of the Life Science Church (Chapter 669) both report that the organization was formed on Dec. 30, 1975. We cannot account for the discrepancy in dates.

\* \* \* \* \* \* \*

In response to our request for certain additional information, including the sources of your receipts, in order that we could make a determination whether you qualified for exemption from Federal income tax under section 501(c)(3) of the Code and also, whether you were a church within the meaning of sections 509(a)(1) and 170(b)(1)(A)(i), you not only failed to provide all the requested information but your responses where [sic] generally vague and incomplete.

Section 501(c)(3) of the Code provides, in part, for the exemption of corporations that are organized and operated exclusively for religious, charitable, literary, scientific, and educational purposes, no part of the net earnings of which inures to any private shareholder or individual.

Section 1.501(c)(3)–1(b)(2) of the Income Tax Regulations provides that the term "articles of organization" or "articles" includes the trust instrument, the corporate charter, the articles of association, or other written instrument by which an organization is created.

Section 1.501(c)(3)–1(b)(4) of the Regulations provides that an organization is not organized exclusively for one or more purposes, unless its assets, upon dissolution, are dedicated to 501(c)(3) purposes.

Rev. Proc. 72–4, 1972–1 C.B. 706, provides, in part, that an exempt status will be recognized if proposed operations can be described in sufficient details to permit a conclusion that an organization will clearly meet the particular requirements under which exemption is claimed. An organization must fully describe the activities in which it expects to engage including the standards, criteria, procedures or other means adopted or planned for carrying out the activities; the anticipated sources of receipts; and, the nature of contemplated expenditures.

Based on the information presented, we are unable to rule on your exempt status under section 501(c)(3) of the Code. The Church Charter that you provided established you as an Auxiliary Church of the Life Science Church of Bloomington, Minnesota. That Church is an unincorporated church granted a Church Charter by the Basic Bible Church Inc. of Minnesota. The Basic Bible Church, Inc., is also known as the Basic Bible Church of America, and its address is 101 West Groveland Avenue, Minneapolis, Minnesota.

You stated that there was absolutely NO affiliation with the Basic Bible Church of Minneapolis, Minnesota, incorrectly called the Life Science Church, its officers and/or directors. Yet the Life Science Church, which granted you a charter whereby you were established as one of its Auxiliary Churches, itself is affiliated with the Basic Bible Church of America. Your charter is conditioned on the basis that the members of the Life Science Church support the principles of the Life Science Church. As a division of the Basic Bible Church of America, the Life Science Church is affiliated with it. Therefore, this affiliation is inherent in the Church Charter granted to you by the Life Science Church.

If as you claim, The New Covenant Church in America has absolutely NO affiliation with the Basic Bible Church of America, the Church Charter granted by the Life Science to you cannot be considered the articles of of [sic] organization of the New Covenant Church in America. Also, if as you claim, The New Covenant Church in America is a completely separate and independent church, then the Church Charter granted to you by the Life Science Church, which established you as an Auxiliary Church of the Life Science

Church may not be described as the articles of organization of The New Covenant Church in America. * * *

Furthermore, because you were unable or unwilling to provide us with certain requested information, including the sources of your receipts, we were unable to make a determination whether you qualify for exemption from Federal income tax under section 501(c)(3) of the Code.

When you are able to *provide a proper creating document and the information requested,* whereby we can make a determination whether you are organized and operated exclusively for religious, charitable, literary, scientific, or educational purposes within the meaning of section 501(c)(3) of the Code, *you may submit a new application* to the District Director, Internal Revenue Service, 300 N. Los Angeles Street, Los Angeles, California 90012. Supporting documents already furnished need not be resubmitted. However, you should attach the enclosed copy of this letter *to your next application.* [Emphasis added.]

In response to the August 9, 1977, proposed adverse ruling letter, petitioner consulted an attorney who, on August 31, 1977, sent to the Internal Revenue Service a copy of the articles of incorporation of the organization entitled "The New Covenant Church in America," along with a short letter stating that the entity complied with the "organization test" for a section 501(c)(3) organization. That letter further stated that the New Covenant Church in America intended to affiliate with the International Federation of the Covenant People of Johannesburg, South Africa. Shortly thereafter, petitioner's attorney (who is also one of three directors of American New Covenant Church) informed respondent by a letter written on September 14, 1977, that the New Covenant Church in America had changed its name to "American New Covenant Church" and enclosed a copy of the articles of incorporation of American New Covenant Church, issued on September 12, 1977, by the secretary of state of the State of California. The articles of incorporation state that the corporation is organized pursuant to the General Nonprofit Corporation Law of the State of California. The articles, which are signed by Stark, as president of the corporation, make absolutely no reference that said entity is a successor corporation. Petitioner's counsel further advised respondent that petitioner had previously furnished all necessary information and that further delay in effecting consideration of the application was unwarranted. No application or supporting documentation was ever submitted to respondent to seek a determination that the entity entitled "American New Covenant Church" qualified as a section 501(c)(3) organization.

Respondent did not consider the materials received from American New Covenant Church as support for L.S.C.'s application for recognition of exemption, and on January 31, 1978, respondent issued a final adverse ruling to L.S.C.[4] Thereafter, a petition for declaratory judgment contesting respondent's final ruling letter issued to L.S.C. was filed with this Court on March 24, 1978; such petition was filed by the American New Covenant Church, a nonprofit corporation incorporated under the laws of the State of California on September 12, 1977.

Respondent, pursuant to Rule 53, Tax Court Rules of Practice and Procedure, has moved to dismiss this case for lack of jurisdiction on the ground that the petition for declaratory judgment was not filed by a proper party. In support thereof, respondent contends the following: L.S.C., not American New Covenant Church, was the organization named in the adverse ruling letter of January 31, 1978. When L.S.C., an unincorporated organization, reorganized into a corporation entitled "American New Covenant Church," a new legal entity was created which was required to file an application for exemption in its own right. Respondent, following the procedure outlined in Rev. Rul. 67–390, 1967–2 C.B. 179,[5] based his final adverse ruling only on the operations and organization of the unincorporated organization L.S.C. and did not consider the representations and submissions of American New Covenant Church as support for L.S.C.'s application. Since American New Covenant Church was not the subject of respondent's final adverse ruling, it is not the proper party to contest the final adverse ruling letter issued to L.S.C. on January 31, 1978.

Petitioner, in its memorandum in opposition to respondent's motion, maintains the following. Respondent knew that "the former Life Science Church (Chapter 669) was no longer a viable entity but had undergone a name change to its present name, American New Covenant Church." Accordingly, new "creating documents" (articles of incorporation) were furnished and petitioner reapplied relying on the supporting documentation

---

[4]No ruling was ever issued by respondent as to the status of the entity entitled American New Covenant Church because no application Form 1023 was ever filed in its name.

[5]Rev. Rul. 67–390, 1967–2 C.B. 179, provides that where an exempt unincorporated association is incorporated and continues its existing operations, a new legal entity is created which must file an application for exemption. See also Rev. Rul. 77–469, 1977–2 C.B. 196.

and the application previously submitted. Furthermore, "At no time did *any* I.R.S. official suggest, hint, or otherwise imply that a *new* Form 1023 would be in order." Since respondent failed to notify petitioner that a new application should have been submitted, he should be estopped from making such an assertion now.

Initially, we find petitioner's estoppel claim that respondent never informed it to submit a new application is completely without merit. Respondent's proposed adverse ruling letter of August 9, 1977, explicitly instructed petitioner that the submission of a creating document and a new application was necessary before he could make a determination; that letter, quoted above, reads in salient part as follows:

> When you are able to provide a proper creating document and the information requested, whereby we can make a determination whether you are organized and operated exclusively for religious, charitable, literary, scientific, or educational purposes within the meaning of section 501(c)(3) of the Code, you may *submit a new application* to the District Director, Internal Revenue Service, 300 N. Los Angeles Street, Los Angeles, California 90012. Supporting documents already furnished need not be resubmitted. However, you should attach the enclosed copy of this letter to *your next application*. [Emphasis added.]

Having disposed of the estoppel claim, we must next decide whether this Court has jurisdiction to make a determination with respect to petitioner's status. Section 7428(a)[6] confers jurisdiction on this Court to "make a declaration" with respect to the "initial qualification" of an organization as an organization described in section 501(c)(3) which is exempt from tax under

---

[6]SEC. 7428. DECLARATORY JUDGMENTS RELATING TO STATUS AND CLASSIFICATION OF ORGANIZATIONS UNDER SECTION 501(c)(3), ETC.

(a) CREATION OF REMEDY.—In a case of actual controversy involving—

(1) a determination by the Secretary

(A) with respect to the initial qualification or continuing qualification of an organization as an organization described in section 501(c)(3) which is exempt from tax under section 501(a) or as an organization described in section 170(c)(2),

\* \* \* \* \* \* \*

(2) a failure by the Secretary to make a determination with respect to an issue referred to in paragraph (1),

upon the filing of an appropriate pleading, the United States Tax Court, the United States Court of Claims, or the district court of the United States for the District of Columbia may make a declaration with respect to such initial qualification \* \* \* . Any such declaration shall have the force and effect of a decision of the Tax Court or a final judgment or decree of the district court or the Court of Claims, as the case may be, and shall be reviewable as such. \* \* \*

section 501(a). Petitioner, desiring to invoke this Court's jurisdiction, alleges that the application for tax-exempt status submitted by L.S.C. on October 18, 1976, was erroneously denied by respondent. We disagree.

Subsection (b) of section 7428 provides certain limitations on our jurisdiction for declaratory judgments relating to section 501(c)(3) status, as follows:

> (b) LIMITATIONS.—
>
> (1) PETITIONER.—A pleading may be filed under this section only by the organization the qualification or classification of which is at issue.
>
> (2) EXHAUSTION OF ADMINISTRATIVE REMEDIES.—A declaratory judgment or decree under this section shall not be issued in any proceeding unless the Tax Court * * * determines that the organization involved has exhausted administrative remedies available to it within the Internal Revenue Service. An organization requesting the determination of an issue referred to in subsection (a)(1) shall be deemed to have exhausted its administrative remedies with respect to a failure by the Secretary to make a determination with respect to such issue at the expiration of 270 days after the date on which the request for such determination was made if the organization has taken, in a timely manner, all reasonable steps to secure such determination.

Thus, under section 7428(b), this Court's jurisdiction is limited only to actions filed by the organization the qualification of which is at issue and only after it has exhausted its administrative remedies.

In order to determine whether we have jurisdiction in this case, we must first decide the threshold issue of whether petitioner underwent a mere name change, or whether American New Covenant Church is a new legal entity separate and distinct from L.S.C.

The record reveals that the following events transpired in the administrative consideration of the exempt status of L.S.C. and later, American New Covenant Church. On October 18, 1976, an organization entitled "Life Science Church (Chapter 669)" filed an application, its charter, and supporting documentation with the Internal Revenue Service. L.S.C. was an unincorporated auxiliary church chartered by its parent church, Life Science Church, which was affiliated with the Basic Bible Church of Minnesota. Its charter states that it may form no other churches or orders and that it shall remain unincorporated. Moreover, its charter is conditioned on the basis that its members are bound to support the principles of the Life Science Church. After nearly 9 months of consideration of the status of L.S.C. by respondent,

L.S.C. informed respondent by letter that it wished to change its name to the New Covenant Church in America, which had absolutely no affiliation with the Basic Bible Church and which intended to affiliate with the International Federation of the Covenant People of Johannesburg, South Africa. Respondent then sent a detailed proposed adverse ruling letter to L.S.C. setting forth therein the specific problem areas in their charter and application which did not meet the regulation requirements for exempt status under section 501(c)(3). That letter further stated that since the New Covenant Church in America was separate and independent from the Basic Bible Church (also referred to as the Life Science Church) which granted their former charter, the submission of a proper creating document and new application was necessary. The New Covenant Church in America subsequently changed its name to American New Covenant Church, incorporated under the laws of the State of California, and sent respondent a copy of the articles of incorporation. It never submitted a new application in the name of American New Covenant Church, nor did it attempt to correct the problems in the application and charter of L.S.C. Accordingly, on January 31, 1978, respondent sent an adverse ruling letter to L.S.C. and did not consider the representations and submissions of the entity entitled American New Covenant Church because it never filed an application.

The record is clear that L.S.C. underwent far more than a mere "name change," as suggested by petitioner. L.S.C was an unincorporated auxiliary church chartered on December 30, 1975, by Life Science Church (also called Basic Bible Church); under the terms of its charter, it could not incorporate, it could not form other churches, and its members were bound to support the principles of the Life Science Church. American New Covenant Church, the petitioner, is a corporation incorporated on September 12, 1977, pursuant to the General Nonprofit Corporation Law of the State of California; it has absolutely no affiliation with the Life Science Church or Basic Bible Church. The terms of L.S.C.'s charter and the corporation's articles of incorporation are inherently inconsistent and mandate the conclusion that the two organizations be treated as separate, independent legal entities.

The petitioner, American New Covenant Church, is an entity

in itself, completely separate from Stark, who was the common founder of both L.S.C. and American New Covenant Church.[7] The principal characteristic of a corporation is its capacity to be treated as a unit. By a legal fiction, now well entrenched in the law for more than 161 years, a corporation is regarded as a legal person, a juristic entity, separate and distinct from the persons who compose or own it. *Dartmouth College v. Woodward*, 17 U.S. 518, 636 (1819). As such, it maintains a continuous existence, it may acquire, own, and transfer property, and centralized management replaces individual action.[8]

In the case at bar, respondent was entirely justified in insisting that the corporation American New Covenant Church submit a new application in order to determine whether it met the regulation requirements for tax-exempt status under section 501(c)(3).[9] Corporations are creatures of statute; forms, regulations, and formalities are the fibers with which they are woven. As we view this record, it was incumbent upon petitioner to adhere to the formalities of the corporate form of organization; it could not rely upon the representations of an unrelated entity or of the people who compose it.

As mentioned hereinbefore, a pleading for a declaratory judgment under section 7428 can only be filed by the organization, the qualification of which is at issue. Sec. 7428(b)(1).[10] Due to our holding that American New Covenant Church is a legal entity, separate and apart from L.S.C., it has no standing to seek a declaratory judgment on the qualification as a tax-exempt organization of L.S.C., the organization which received a "determination" by respondent (as required by section 7428(a)) in the adverse ruling letter issued on January 31, 1978. See *New*

---

[7]A taxpayer who permits or utilizes a corporation to engage in business cannot deny the corporation's separate existence for tax purposes. *Bolger v. Commissioner*, 59 T.C. 760, 766–767 (1973); *Moline Properties, Inc. v. Commissioner*, 319 U.S. 436, 438–439 (1943).

[8]1 G. D. Hornstein, Corporation Law and Practice 12 (1959); H. G. Henn, Law of Corporations, sec. 68, pp. 92–93 (2d ed. 1970).

[9]The importance of filing a new application in a situation such as this is illustrated by question 5, on page 3 of the application, which asks, "Is the organization the outgrowth of another organization or does it have a special relationship to another?" This question was answered "No" on the application of "Life Science Church (Chapter 669)."

[10]See *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26 (1976), where the Supreme Court dismissed third-party litigation, in a case involving an exempt organization issue, on standing grounds.

*Community Sr. Citizen Housing v. Commissioner*, 72 T.C. 372 (1979).

Having held that petitioner has no standing to bring a declaratory judgment action on the exempt status of L.S.C., the organization to which respondent issued an adverse determination, we believe it is also necessary to determine whether we have jurisdiction to make a declaration on the tax-exempt status of the entity entitled "American New Covenant Church" the petitioner. The burden of proof is upon petitioner to establish that it meets the jurisdictional requirements of section 7428. Rule 217(c), Tax Court Rules of Practice and Procedure. An organization may not receive a declaratory judgment under section 7428 until it has exhausted all administrative remedies available to it within the Internal Revenue Service. Sec. 7428(b)(2); see *Houston Lawyer Referral Serv. v. Commissioner*, 69 T.C. 570, 574–576 (1978). It must demonstrate that it has made a request of respondent for a determination and that respondent has either failed to act or has acted adversely to it. An organization has not exhausted its administrative remedies until it satisfies all the appropriate procedural requirements of the Internal Revenue Service, and respondent may decline to make a determination if the organization fails to comply with a reasonable request to supply the necessary information.[11] Here, respondent in effect requested petitioner to submit a new application. Petitioner has never submitted such application which is essential for respondent to make a determination. Therefore, respondent properly declined to make a determination on the status of petitioner. Accordingly, petitioner has failed to exhaust its

---

[11]The committee reports accompanying the enactment of sec. 7428 gave the following explanation of the "exhaustion of administrative remedies" requirement:

"*Exhaustion of administrative remedies required.* —For an organization to receive a declaratory judgment under this provision, it must demonstrate to the court that it has exhausted all administrative remedies which are available to it within the Internal Revenue Service. Thus, it must demonstrate that it has made a request of the Internal Revenue Service for a determination and that the Internal Revenue Service has either failed to act, or has acted adversely to it, and that it has appealed any adverse determination by a district office to the national office of the Internal Revenue Service or has requested or obtained through the district director technical advice of the national office. To exhaust its administrative remedies, the organization must satisfy all appropriate procedural requirements of the Service. For example, *the Service may decline to make a determination if the organization fails to comply with a reasonable request by the Service to supply the necessary information on which to make a determination.* [H. Rept. 94–658, 94th Cong., 1st Sess. (1975), 1976–3 C.B. (Vol. 2) 701, 979, 980; S. Rept. 94–938, 94th Cong., 2d Sess. (1976), 1976–3 C.B. (Vol. 3) 49, 628. Emphasis added.]"

administrative remedies and we are without jurisdiction to make a declaration with respect to its qualification as a section 501(c)(3) organization.

Since petitioner is without standing to seek a declaratory judgment on the adverse determination given by respondent to L.S.C., and it has failed to exhaust its administrative remedies in seeking a determination on its own behalf, we must dismiss this case for lack of jurisdiction.[12]

In accordance with the foregoing,

> *An appropriate order of dismissal will be entered.*

---

[12]We note that petitioner may still file an application to seek tax-exempt status, and, if it is denied, this Court would not be precluded by the principles of res judicata from entertaining a second petition for a declaratory judgment under sec. 7428. See *Houston Lawyer Referral Serv. v. Commissioner*, 69 T.C. 570, 577–578 (1978); H. Rept. 94–658, 94th Cong., 1st Sess. (1975), 1976–3 C.B. (Vol. 2) 701, 978.