FRIENDS OF THE SOCIETY OF SERVANTS OF GOD, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 14485–79X.    Filed November 12, 1980.

*Paul J. Sax* and *Dean E. Criddle*, for the petitioner.
*Bernard B. Kornmehl* and *Joyce E. Britt*, for the respondent.

## OPINION

FAY, *Judge*: Petitioner seeks a declaratory judgment and challenges respondent's determination that petitioner was not a "church" within the meaning of section 170(b)(1)(A)(i)[1] for purposes of determining whether it was a private foundation under section 509(a)(1). Respondent has moved to dismiss for lack of jurisdiction on the ground that petitioner received a favorable ruling that it was not a private foundation. The issue presented is whether this Court has jurisdiction under section 7428(a) to review respondent's advance ruling that although petitioner failed to qualify under section 509(a)(1) as a section 170(b)(1)(A)(i) church, it could reasonably be expected to so qualify under section 170(b)(1)(A)(vi) as a publicly supported organization.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended.

All of the facts have been stipulated under Rules 122 and 217, Tax Court Rules of Practice and Procedure. Those relevant to the jurisdictional issue may be summarized very briefly. Petitioner Friends of the Society of Servants of God is the United States affiliate of the Society of Servants of God, a religious organization chartered under the laws of India. Petitioner's religious, spiritual, and humanitarian aims are to help people realize the Divine Self within and to introduce spiritual values into their material lives. Petitioner is a California nonprofit corporation with its principal offices located in San Francisco at the home of its principal officer, Servant-in-Charge Behram R. Irani.

In its application for recognition of exempt status under section 501(c)(3), Form 1023, petitioner requested a definite ruling that it was a non-private foundation[2] under section 509(a)(1) on the basis that it was a church described in section 170(b)(1)(A)(i). Petitioner did not request an advance ruling under section 170(b)(1)(A)(vi). Petitioner did not fill out part VII-B of its application, "Analysis of Financial Support," because it did not claim non-private foundation status under section 170(b)(1)(A)(vi) or under section 509(a)(2).

In the body of its application, petitioner indicated that it expected to receive all of its support through contributions from its directors, followers and sympathizers, and from N.C. Agency (U.S.A.) Inc. N.C. Agency (U.S.A.) Inc. will be organized as a taxable California business corporation and will be managed by the same persons who are petitioner's directors. Besides its 3 directors, petitioner has 25 followers and sympathizers in the United States, 10 of whom live in the San Francisco area. Petitioner has no fundraising programs and does not intend to engage in substantial activities for the purpose of attracting new members.

In answering respondent's first request for additional information, entitled "Church Questionnaire," petitioner indicated that it expected to receive all of its support through contributions from its members and from N.C. Agency (U.S.A.) Inc., as described above. Petitioner also indicated that Behram R. Irani was paying its legal expenses, but that otherwise its directors

---

[2]For convenience we will refer to sec. 501(c)(3) organizations that are not private foundations under sec. 509(a) as "non-private foundations."

had not made contributions. Petitioner did not provide further details about the sources of its expected support.

Respondent's second request for additional information related solely to petitioner's religious history and religious activities. No information was requested concerning the nature or sources of petitioner's support.

On March 15, 1979, respondent ruled that petitioner was an organization described in section 501(c)(3). However, petitioner did not receive the definite ruling it had asked for under section 509(a). The ruling letter stated:

> Because you are a newly created organization, we are not now making a final determination of your foundation status under section 509(a) of the Code. However, we have determined that you can reasonably be expected to be a publicly supported organization described in sections 509(a)(1) and 170(b)(1)(A)(vi).
>
> Accordingly, you will be treated as a publicly supported organization, and not as a private foundation, during an advance ruling period.

No basis was given for respondent's advance ruling under section 170(b)(1)(A)(vi). The letter did not explain why petitioner was not being given a definite ruling. Petitioner's assertion that it was a church under section 170(b)(1)(A)(i) was not mentioned.

Under the March 15th ruling letter, petitioner's non-private foundation status was conditional pending a final determination after the conclusion of a 2-year advance ruling period. The ruling letter stated:

> If you do not meet the public support requirements during the advance ruling period, you will be classified as a private foundation for future periods. Also, if you are classified as a private foundation, you will be treated as a private foundation from the date of your inception for purposes of sections 507(d) and 4940.

Although respondent's advance ruling was favorable on its face, petitioner was accorded the right to protest. Petitioner did protest on the grounds that the advance ruling was arbitrary, contrary to respondent's publicly announced positions regarding qualification as a church, and in violation of petitioner's First Amendment rights. Petitioner reiterated its claim that it was a church described in section 170(b)(1)(A)(i). After a conference and further submissions by petitioner, respondent issued a second letter dated July 10, 1979, explaining why petitioner was not given non-private foundation status as a church. This letter stated:

Our review of your case file, including your protest brief and the information that you submitted following your telephone conference discloses that your activities more closely parallel those of the organization described in *Vaughn v. Chapman* [48 T.C. 358 (1967)], rather than those of a particular sect or denomination. Therefore, you do not qualify as a church. * * *

Accordingly, our ruling letter of March 15, 1979, is considered to be correct and it is hereby affirmed.

These two letters form the basis of petitioner's action for a declaratory judgment.

The underlying issue in this controversy is whether or not petitioner is a private foundation. Since 1969, all nonprofit organizations exempt from taxation under section 501(c)(3) have been divided into "private foundations" and those that are not private foundations, herein "non-private foundations." See generally S. Rept. 91–552, Tax Reform Act of 1969, 1969–3 C.B. 423, 440–464. If an exempt organization is classified as a private foundation, it is subject to a 2-percent tax on its net investment income.[3] Sec. 4940(a). Private foundations, their managers, and a few other persons dealing with the foundation (sec. 4946(a) and (c)) are subject to a series of excise taxes for certain prohibited acts or failures to act.[4] Secs. 4941–4948. Further, private foundations with assets of at least $5,000 must file annual reports, which must be made available for public inspection, or face stiff penalties. Secs. 6056, 6104(c), 6652(d), and 6685. In short, classification as a private foundation is burdensome.

The term "private foundation" is defined in section 509(a). Section 509(a) classifies all 501(c)(3) organizations as private foundations unless one of four exceptions applies. Sec. 509(a)(1) to (4). In this case, both petitioner and respondent rely on section 509(a)(1), which excludes organizations described in section 170(b)(1)(A)(i) through (vi).[5]

Respondent's advance ruling was that petitioner "can reasonably be expected" to qualify as a publicly supported organization

[3]Four percent for taxable years beginning prior to Oct. 1, 1977. Sec. 520(a), Revenue Act of 1978, 92 Stat. 2884.

[4]But see generally *Adams v. Commissioner*, 72 T.C. 81 (1979).

[5]SEC. 509. PRIVATE FOUNDATION DEFINED.

(a) GENERAL RULE.— For purposes of this title, the term "private foundation" means a domestic or foreign organization described in section 501(c)(3) other than—

(1) an organization described in section 170(b)(1)(A) (other than in clauses (vii) and (viii));
* * *

described in section 170(b)(1)(A)(vi). Publicly supported organizations are defined as follows:

SEC. 170(b)(1)(A) * * *

(vi) an organization referred to in subsection [170] (c)(2)[6] *which normally receives a substantial part of its support* (exclusive of income received in the exercise or performance by such organization of its charitable, educational, or other purpose or function constituting the basis for its exemption under section 501(a)) from a governmental unit referred to in subsection (c)(1) or *from direct or indirect contributions from the general public,* * * * [Emphasis added.]

The language "which normally receives a substantial part of its support * * * from direct or indirect contributions from the general public" is interpreted by section 1.170A–9(e), Income Tax Regs., discussed in more detail below. Suffice it to say the regulations are almost frighteningly complex and technical, running to some 24 pages. The regulations' requirements must be met yearly, based, in general, on the organization's 4 prior taxable years. See the definition of "normally" at sec. 1.170A–9(e)(4), Income Tax Regs. Newly created organizations usually may only obtain 2- or 3-year advance rulings. Sec. 1.170A–9(e)(5)(i), but see –9(e)(4)(vi), Income Tax Regs. Grantors and contributors may rely on such an advance ruling, unless they are aware that the organization will not in fact qualify or that the advance ruling will be withdrawn. Sec. 1.170A–9(e)(5)(iii)(*c*), Income Tax Regs.

Petitioner requested a ruling on the ground that it was a section 170(b)(1)(A)(i) church. If petitioner is a church, it is entitled to a definite ruling rather than an advance ruling. Such a ruling would not be subject to annual review so long as petitioner's operations remained those of a church. Petitioner would also be entitled other benefits unrelated to section 501(c)(3) or 509(a), primarily the relief from having to file annual information returns granted under section 6033(a)(2)(A)(i).[7]

The only issue presented at this time is whether we have jurisdiction under section 7428(a) to review respondent's advance ruling incorporating the determination that petitioner is

---

[6]Petitioner clearly is a sec. 170(c)(2) charity since that section parallels, for domestic organizations, sec. 501(c)(3).

[7]See also secs. 410(c)(1)(B) and (d), 411(e)(1)(B), 412(h)(4), and 414(e); 508(c)(1)(A); 512(b)(14) and 514(b)(3)(E), 3309(b)(1); 5122(c); 6043(b)(1); and 7605(c).

not a section 170(b)(1)(A)(i) church. It is undisputed that petitioner has exhausted its administrative remedies as required by section 7428(b)(2).[8]

Section 7428(a) provides:

(a) CREATION OF REMEDY.— *In a case of actual controversy involving—*
(1) *a determination by the Secretary—*
(A) with respect to the initial qualification or continuing qualification of an organization as an organization described in section 501(c)(3) which is exempt from tax under section 501(a) or as an organization described in section 170(c)(2),
(B) *with respect to the initial classification* or continuing classification *of an organization as a private foundation (as defined in section 509(a)),* or
(C) with respect to the initial classification or continuing classification of an organization as a private operating foundation (as defined in section 4942(j)(3)), or
(2) a failure by the Secretary to make a determination with respect to an issue referred to in paragraph (1),

upon the filing of an appropriate pleading, *the United States Tax Court,* the United States Court of Claims, or the district court of the United States for the District of Columbia *may make a declaration* with respect to such initial qualification or continuing qualification or *with respect to such initial classification* or continuing classification. * * *
[Emphasis added.]

Basically, the statute permits organizations to seek a declaratory judgment as to their qualification under section 170(c)(2), 501(c)(3), 509(a), or 4942(j)(3) when a ruling letter request for such qualification has been denied, revoked, or ignored.

Congress enacted section 7428 after, in effect, being urged to do so by the Supreme Court. In *Bob Jones University v. Simon,* 416 U.S. 725 (1974), and *Alexander v. "Americans United" Inc.,* 416 U.S. 752 (1974), the Court held that organizations whose favorable ruling letters of tax-exempt status had been withdrawn could not obtain relief in the courts unless and until a tax liability was asserted by the Internal Revenue Service. In *Bob Jones University,* the Court went on to note:

we are not unaware that Congress has imposed an especially harsh regime on § 501(c)(3) organizations threatened with loss of tax-exempt status and with withdrawal of advance assurance of deductibility of contributions. * * * The degree of bureaucratic control that, practically speaking, has been placed in the Service over those in petitioner's position is susceptible of abuse, regardless of

---

[8]See *American New Covenant Church v. Commissioner,* 74 T.C. 293 (1980).

how conscientiously the Service may attempt to carry out its responsibilities. [416 U.S. at 749–750.]

Both houses of Congress quoted the above language to explain the public policy behind section 7428. H. Rept. 94–658 (1975), 1976–3 C.B. (Vol. 2) 701, 976; S. Rept. 94–938 (1976), 1976–3 C.B. (Vol. 3) 49, 624. Accordingly, the statute's primary purpose is to provide nonprofit organizations claiming tax-exempt or non-private foundation status with an avenue for prompt judicial relief from erroneous or arbitrary determinations by the Internal Revenue Service.

The parties in this case differ in their interpretation of the scope of the review available. Petitioner points out that the statute by its terms confers jurisdiction in cases "involving (1) a determination by the Secretary * * * (B) *with respect to* the initial clasification or continuing classification of an organization as a private foundation (as defined in section 509(a))." Petitioner contends that respondent's determination that it was not a church was made "with respect to" its initial classification as a private foundation. Stated generally, petitioner argues that the statute grants jurisdiction in all cases where the parties disagree about some aspect of a private ruling on an organization's private foundation or tax-exempt status.

We disagree for two reasons. First, section 7428(a) applies only "In a case of actual controversy." Therefore, the statute cannot apply unless the taxpayer has received an adverse ruling. Second, the statute confers jurisdiction only with respect to four subsections of the Code —subsections 170(c)(2), 501(c)(3), 509(a), and 4942(j)(3). Since these four sections are specifically enumerated, and declaratory judgments or injunctions are otherwise prohibited by section 7421 (a) (*Bob Jones University v. Simon, supra*), it follows that the jurisdictional prerequisite for an action under section 7428(a) is an adverse determination under one of the four above-listed Code sections. See *Ohio County & Independent Agricultural Societies, Delaware County Fair v. Commissioner*, 610 F.2d 448 (6th Cir. 1979), affg. an order of this Court dated July 14, 1977 (docket No. 4811–77X), cert. denied 446 U.S. 965 (1980). Section 170(b)(1)(A) is not among the listed subsections. Thus, in the circumstances of this case, petitioner may not ask for a declaratory judgment that it is a church under section 170(b)(1)(A)(i) *unless* qualification as a church has a

direct bearing on petitioner's foundation status under section 509(a).

Based on the above reasoning, respondent contends that jurisdiction under section 7428(a)(1)(B) is only available where the organization has received a "fully adverse" ruling and the Service has determined that the organization *is* a private foundation. In the instant case, respondent argues that petitioner may not here litigate its status as a church under section 170(b)(1)(A)(i) becaue it has already received a favorable ruling under sections 170(b)(1)(A)(vi) and 509(a). In short, respondent argues that petitioner may not challenge the basis for its favorable classification as a non-private foundation.

Petitioner disagrees with the premise of respondent's argument. Petitioner contends that respondent's advance ruling letter was adverse in many important respects. Accordingly, petitioner argues that it did not actually receive a favorable ruling that it was a non-private foundation. We agree with petitioner. Therefore, we hold that petitioner received an adverse determination under section 509(a) which may be challenged in a suit for a declaratory judgment.

To begin with, petitioner requested a definite ruling which was denied. Respondent determined that petitioner was entitled only to an advance ruling. Respondent consistently ignores this facet of the ruling letter on brief, stating, for example, "The Commissioner determined that petitioner was not a private foundation." That never happened. The ruling letter expressly stated, "we are not now making a final determination of your foundation status under section 509(a) of the Code." All petitioner really got was a trial period within which to demonstrate that it was publicly supported. Since petitioner requested a definite ruling, respondent's advance ruling was adverse. At best, respondent's ruling constitutes a failure to make a determination which itself would support jurisdiction under section 7428(a)(2).

Respondent suggests on brief that if petitioner is finally determined not to be a publicly supported foundation at the end of the advance ruling period, petitioner will then be liable for the tax under section 4940(a) on its net investment income during the advance ruling period which may be challenged in a suit for refund or, if a deficiency notice is issued, in this Court. Thus, respondent concludes that petitioner has not been denied a

forum. This argument ignores the facts, since petitioner has no investments and may never have any net investment income to be taxed. Sec. 4940(a). More importantly, it completely ignores the legislative purpose of section 7428, which is to permit judicial review of an adverse determination *before* the nonprofit organization dies on the vine. S. Rept. 94–938 (1976), 1976–3 C.B. (Vol. 3) 49, 623–625.

Respondent's ruling is also adverse because it requires petitioner, as a condition for non-private foundation status, to meet and to continue to meet annually the public support standards set forth in section 1.170 (a)–9(e), Income Tax Regs. Thus, the ruling letter imposes terms on petitioner's foundation status which would not have been imposed upon a church. Moreover, since petitioner did not request a ruling based on section 170(b)(1)(A)(vi), the administrative record contains very little evidence suggesting that petitioner will qualify under the regulations. In fact, respondent's ruling that petitioner could "reasonably be expected" to qualify as a publicly supported organization is completely unsupported by the record.

The regulations under section 170(b)(1)(A)(vi) set forth two tests for determining whether a charitable organization is publicly supported. Under the "mechanical" test, an organization is treated as publicly supported if its contributions from governmental units plus contributions from the general public equal at least 33⅓ percent of the total support the organization normally receives. Sec. 1.170A–9(e)(2), Income Tax Regs. "Support" includes most of the typical receipts of a charitable organization, but excludes income which the organization collects in the course of performing its exempt function, such as admissions or sales of merchandise. Sec. 1.170A–9(e)(7)(i), Income Tax Regs. See sec. 509(d)(1) and (3) to (6). However, "public support," for purposes of the 33⅓-percent test, counts the contributions of any one person only up to 2 percent of the organization's total support during the relevant accounting period. Sec. 1.170A–9(e)(6)(i), Income Tax Regs. See "normally" as defined in sec. 1.170A–9(e)(4), Income Tax Regs. Petitioner stated in its application that all of its support would come from its 3 directors, 25 followers, and its taxable feeder affiliate N.C. Agency (U.S.A.) Inc.[9] Because petitioner is so small, nearly all of

---

[9]However, as both parties point out on brief, N.C. Agency (U.S.A.) Inc. must be counted as a single person together with Behram Irani for purposes of the 2-percent limitation. See sec.

petitioner's 28 members will each have to make substantial yearly contributions for petitioner to meet the "mechanical" 33⅓ percent of support from public contributions test.

For example, petitioner would meet the test if 17 of its members each contributed more than 2 percent of petitioner's total support (17 × 2 percent = 34 percent) or if 7 members each contributed more than 2 percent and 20 members each contributed at least 1 percent. (14 percent + 20 percent = 34 percent.) However, nothing in the record suggests that petitioner's support will be that broad based. Furthermore, large infusions of support from any source will make both 2 percent and 33⅓ percent of the total larger and harder to reach for all other members. For example, if the contributions from any three persons equal 75 percent of total support, petitioner could never meet the "mechanical" test because all other support (25 percent) plus that allowed from three persons (6 percent) could not be greater than 31 percent. Respondent demonstrates on brief that petitioner will exceed the 33⅓-percent support test if none of petitioner's members are related, all are substantial contributors, and they each contribute approximately equal amounts. However, we do not believe that this remote hypothetical supports the inference that this is a "reasonable" expectation.

An organization may also qualify under section 170(b)(1)(A)(vi) if it meets a "facts-and-circumstances" test. Sec. 1.170A–9(e)(3), Income Tax Regs. To meet this test, the charity must (1) receive 10 percent of its support from governmental or public contributions, (2) "be so organized and operated as to attract new and additional public or governmental support on a continuous basis" (sec. 1.170A–9(e)(3)(ii), Income Tax Regs.) and (3) satisfy some or all of a number of other factors which generally relate to public participation and responsiveness. Petitioner clearly fails both the second and third prongs of the above test. Petitioner has no outside fundraising programs, does not actively solicit new members, does not seek broad public support or participation, and, frankly, has limited public appeal.

---

1.170A–9(e)(6)(i), Income Tax Regs., which incorporates the "disqualified person" tests of sec. 4946(a)(1)(C) through (G).

See sec. 1.170A–9(e)(5)(ii), Income Tax Regs. Respondent's argument on brief that, "As petitioner was a newly created organization, the Commissioner gave it the benefit of the doubt that it would use its seed money to expand its solicitation program," simply ignores the stipulated record.

In summary, not only is respondent's advance ruling without factual foundation in the record, the ruling imposes additional requirements upon petitioner, which are not very likely to be met, as the price for non-private foundation status. It is hard to see why that should be characterized as a favorable ruling.

Finally, respondent argues that an important public policy behind section 7428 was to allow grantors and contributors to obtain a determination that their gifts would be tax deductible without having to wait for a tax to be imposed whose validity could then be contested in court. We agree. S. Rept. 94–938 (1976), 1976–3 C. B. (Vol. 3) 49, 623–625. However, we disagree with respondent's further contention that petitioner's contributors can rely on the ruling letter during the advance ruling period. Section 1.170A–9(e)(5)(iii)(c), Income Tax Regs., provides that contributors can generally rely on an advance ruling letter until public notice of its termination. But the above regulation goes on to state that reliance is not available "if the grantor or contributor was responsible for, or aware of, the act or failure to act that resulted in the organization's loss of classification under section 170(b)(1)(A)(vi)."

Respondent's regulations explicitly recognize that large contributions from a single source can lead to a loss of qualification under section 170(b)(1)(A)(vi). Sec. 1.170A–9(e)(5)(iii)(c) and – 9 (e)(6)(ii) to (iv), Income Tax Regs. Because the number of petitioner's potential contributors is so small, any substantial contribution could have this effect. In other words, no substantial contributor can reasonably rely on respondent's advance ruling letter. Thus, the ruling is not favorable with respect to petitioner's large contributors, the only persons with a significant stake in whether contributions are deductible up to 50 percent of adjusted gross income under section 170(b)(1)(A).

The delay inherent in respondent's failure to make a final determination, the support requirements imposed upon petitioner's foundation status, and the uncertainty experienced by petitioner's substantial contributors all adversely affect petitioner. None of these restrictions would have been imposed upon

petitioner's foundation status had petitioner been determined to be a church. Despite respondent's attempt to ignore the church question in his first ruling letter, respondent's second letter contains a clear ruling that petitioner is not a church. If petitioner had been found to be a church under section 170(b)(1)(A)(i), it would also have been a non-private foundation under section 509(a)(1). In other words, petitioner's status as a church *directly affects* its qualification as a non-private foundation. In this context, petitioner's church status is a justiciable issue under section 7428(a)(1)(B), which authorizes a declaratory judgment determining whether or not petitioner is a private foundation.

Both parties have discussed on brief whether or not respondent has discretionary authority to issue rulings under section 509 on grounds other than those requested; whether, if so, respondent abused his discretion in this case; and whether respondent's ruling was issued in bad faith. These questions are beside the point here. The relevant fact in this case is that respondent's ruling on petitioner's status as a private foundation under section 509(a) was adverse in many important respects.

We hold that this Court has jurisdiction under section 7428 to consider whether petitioner is entitled to a definite ruling that it is a non-private foundation under sections 509(a)(1) and 170(b)(1)(A)(i).

*An appropriate order will be entered.*

