KENNETH E. VAN CLEVE and BRUNLA A. VAN CLEVE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Van Cleve v. Commissioner
Docket No. 4522-83.
United States Tax Court
T.C. Memo 1985-546; 1985 Tax Ct. Memo LEXIS 86; 50 T.C.M. (CCH) 1353; T.C.M. (RIA) 85546; October 30, 1985. Peter R. Stromer, for the petitioners. Donna J. Rice, for the respondent. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: Respondent determined deficiencies in petitioners' Federal income tax and additions to tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a) [1]
1978
$3,768
$231
1979
4,885
260
1980
5,062
282
After concessions, the issues for decision are: (1) whether petitioners are entitled to claimed deductions for the years in issue for charitable contributions in the respective amounts of $10,741, $16,000 and $20,354; (2) whether petitioners are liable for the addition to tax for negligence under section 6653(a); and (3) whether the United States should be awarded damages pursuant to section 6673. FINDINGS OF FACT Some of the facts have been stipulated and *88 are so found. The sipulation of facts is incorporated herein by this reference. Petitioners, Mr. and Mrs. Van Cleve, husband and wife, resided at 4640 Clarewood Drive, Oakland, California (the Clarewood Drive property) during the years in issue and at the time they filed the petition herein. During all years in issue, Mr. Van Cleve worked as a self-employed food consultant and Mrs. Van Cleve worked at Kaiser Steel Industries as an executive secretary. As a result of watching the "60 Minutes" television program, petitioners became aware of the Universal Life Church ("ULC"). [2] Shortly thereafter, in 1978, petitioners paid $25 to ULC and received a charter to form a congregation known as "Symphony of Life Church-ULC" (the congregation). The first meeting of Directors of Symphony of Life Church-ULC was held on October 16, 1978. At that meeting, Mr. Van Cleve was elected President; Mr. Van Cleve was elected Treasurer; and petitioners' son, Kenneth, was elected Secretary. A *89 checking account for the congregation was established, with the petitioners being the only authorized signatories. Following the October 16 meeting, and on or before December 16, 1978, petitioners gave the congregation their 1978 Volkswagen Rabbit automobile (having an appraised value of $5,000 at the time of contribution) "to be used by Pastor Van Cleve and others on church business." Petitioners "contributed", in 1978, an additional $5,000 to the congregation, and gave $180 to Universal Life Church Monastery ("ULC-Monastery"). In 1979 and 1980, petitioners "contributed" $16,000 and $20,354, respectively, to the congregation. All funds of the congregation were deposited in its checking account and were used to pay the mortgage on, and utilities furnished to, the Clarewood Drive property (where the congregation held services) [3], petitioners' educational expenses and expenses for the 1978 automobile "contributed" to the congregation. Petitioners taught classes in spiritual growth and did personal counseling. They recorded daily religious dial-a-truth telephone messages; each message ended with the prayer: *90 "May the love and joy of the Universal Life which is in you and in me be with us now and always." In their 1978, 1979 and 1980 tax returns, petitioners deducted $10,741, $16,459 and $20,354, respectively, as charitable contributions. [4] Respondent disallowed the entire charitable deductions for 1978 and 1980 [5], and $16,000 of the claimed deduction for 1979, contending that (1) Symphony of Life Church-ULC was not an organization satisfying the criteria as a qualified donee charitable organization set forth in section 170(c)(2); (2) the net earnings of Symphony of Life Church-ULC inured to petitioners' benefit; and (3) petitioners did not relinquish dominion over, and control of, the funds "contributed" to the Symphony of Life Church-ULC. *91 In addition, respondent determined that petitioners were liable for additions to tax under section 6653(a), and he seeks an award of damages in the amount of $5,000 pursuant to section 6673. OPINION Deductions are a matter of legislative grace, and in order to claim the deduction, the taxpayer must satisfy the specific requirements of the authorizing statute. New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934). In general, section 170(a) allows as a deduction any charitable contribution (defined in section 170(c)) made within the taxable year. Section 170(c) defines a "charitable contribution" as a contribution or gift to or for the use of, a "corporation, trust, or community chest, fund or foundation" which is "organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes", provided that none of the net earnings of the organization inure to the benefit of a private individual. Section 170(c)(2). Petitioner bear the burden of proving that they are entitled to the claimed charitable deductions. Welch v. Helvering,290 U.S. 111, 133; Rule 142(a), Tax Court Rules of Practice and Procedure. *92 Petitioners failed to substantiate $536 of the $10,741 charitable deduction claimed in 1978. They presented no evidence, other than their own testimony, that such contribution was in fact made. Accordingly, respondent's disallowance of $536 of the $10,741 charitable deduction claimed in 1978 is sustained. All of petitioners' other claimed charitable contributions are to Symphony of Life Church-ULC and to ULC-Monastery and are substantiated. However, petitioners failed to prove that either organization is a qualified charitable organization to which contributions may be deductible under section 170. Petitioners do not argue that Symphone of Life Church-ULC is a qualified charitable organization in its own right. Rather, they claim that the qualified charitable status of ULC attaches to Symphony of Life Church-ULC because it was chartered by ULC. In Universal Life Church, Inc. v. United States,372 F.Supp. 770 (E.D. Cal. 1974), ULC was held to be exempt under section 501(c)(3). However, that holding applied only to the individual parent church involved therein; it was not a group exemption. Davis v. Commissioner,81 T.C. 806, 815 (1983), *93 aff'd without published opinion, 767 F.2d 931 (9th Cir. 1985). Symphony of Life Church-ULC is not an exempt organization merely by virtue of having been chartered by ULC. Its status as a qualified charitable organization must be separately determined. Hall v. Commissioner,729 F.2d 632 (9th Cir. 1984); Universal Life Church, Inc. v. United States,582 F.Supp. 79 (N.D. Cal. 1984); American New Covenant Church v. Commissioner,74 T.C. 293 (1980). The evidence pertaining to the activities of Symphony of Life Church-ULC consists mainly of petitioners' self-serving testimony with regard to recorded dial-a-truth telephone messages and their claim that they taught classes "to hundreds of individuals," counseled "several dozen people," and engaged in "growth work." Petitioners produced but a single witness, their friend of 15 years, who purportedly participated in, or benefited from, these activities within the relevant time period. Not only is there scant evidence that Symphony of Life Church-ULC was "organized and operated exclusively for religious, charitable * * * or educational purposes", but there is convincing evidence *94 that the net income of Symphony of Life Church inured to the benefit of petitioners in violation of section 170(c)(2)(C). [6] Accordingly, we find that Symphony of Life Church-ULC does not qualify as an organization to which deductible charitable contributions may be made under section 170. Petitioners claim that their contributions, in essence, were made to ULC, even though their checks were made payable to Symphony of Life Church-ULC. [7] The cancelled checks establish that all contributions to Symphony of Life Church-ULC were deposited into its bank account. There is no evidence that Symphony of Life Church-ULC thereafter transferred any funds to ULC. On the contrary, petitioners' witness, a member of the Board of Directors of ULC, testified that ULC was never in actual receipt of the funds transferred to Symphony of Life Church-ULC. *95 Petitioners contend, however, that ULC was in constructive receipt of the funds because funds deposited in the account of Symphony of Life Church-ULC were owned by ULC. No documentary evidence of any such arrangement was introduced nor was there any evidence that ULC actually exercised control over the disposition of the funds in that account. Petitioners were the only authorized signatories on the account; as petitioners testified, their signatory authority was not restricted to exercise in a trustee or fiduciary capacity. We thus find that all all times petitioners has unfettered control over the funds they transferred to Symphony of Life Church-ULC. With respect to petitioners' contributions to ULC-Monastery, the record is devoid of any description of that organization's activities. Petitioners failed to meet their burden of proving that ULC-Monastery was an organization with respect to which a deduction under section 170(c)(2) may be claimed; the deduction for a $180 contribution to ULC-Monastery was properly disallowed. Petitioners deducted the $25 paid to ULC during 1978. Petitioners testified that the $25 represented a fee paid to ULC in order to obtain the charter *96 for Symphony of Life Church-ULC and related paperwork. Because this payment was made in expectation of benefits from ULC, it is not a charitable donation, and was properly disallowed by respondent. Seed v. Commissioner,57 T.C. 265 (1971). With regard to the additions to tax under section 6653(a), petitioners bear the burden of proving that no part of the underpayment was due to negligence or intertional disregard of the rules and regulations. Enoch v. Commissioner,57 T.C. 781, 802 (1972). Petitioners claimed interest deductions for the mortgage payments made by Symphony of Life Church-ULC. In essence, petitioners claimed a double deduction for one payment. Petitioners knowingly claimed a deduction as a charitable contribution for monies used to pay nondeductible household expenses. Petitioners are literate and intelligent adults. As such, they should have known better than to deduct as a charitable contribution amounts channeled from themselves to a "church" which were then used to pay their personal living expenses. See Davis v. Commissioner,supra,81 T.C. at 820-821. Petitioners have failed to sustain their burden *97 of proving that their actions were not due to negligence or intentional disregard of the rules and regulations. Therefore, respondent's determination with regard to the imposition of the section 6653(a) addition to tax is sustained. Respondent also seeks damages pursuant to section 6673. Section 6673 provides: Whenever it appears to the Tax Court that proceedings before it have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceedings is frivolous or groundless, damages in an amount not in excess of $5,000 shall be awarded to the United States by the Tax Court in its decision. Damages so awarded shall be assessed at the same time as the deficiency and shall be paid upon notice and damand from the secretary and shall be collected as part of the tax. Petitioners argue that section 6673 infringes on their constitutional right to petition the Government for redress of grievances or, in the alternative, that they are not within the ambit of the statute. As we noted in Bell v. Commissioner, 85 T.C.     (1985), this argument itself approaches frivolity. We have no doubt, for the reasons discussed in Bell, *98 that section 6673 is constitutional. Prior to trial, petitioners were furnished by respondent with copies of cases that disallowed charitable contribution deductions in circumstances similar to that of petitioners. The maintenance of this case in the face of overwhelming contrary authority and warnings by respondent leads to the conclusion that petitioners maintained their case primarily for delay. Therefore, damages are awarded to the United States pursuant to section 6673 in the amount of $5,000. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, as in effect during the years in issue.↩
2. During the years in issue, ULC was exempt from Federal income tax under section 501(c)(3). ULC's exempt status was revoked on September 4, 1984. Announcement 84-90, 1984-36 I.R.B. 32↩.
3. Title to the Clarewood Drive property was retained by petitioners.↩
4. In addition to their "contributions" to Symphony of Life Church-ULC and to ULC-Monastery, petitioners deducted $536 in 1978 and $459 in 1979 for contributions to other charities. Petitioners also deducted the $25 payment to ULC in 1978. ↩
5. Respondent disallowed $536 of the $10,741 deduction for 1978 based on petitioners' failure to substantiate such contribution. At trial, petitioners introduced no documentation substantiating the claimed deduction.↩
6. Symphony of Life Church made mortgage payments on petitioners' personal residence, paid petitioners' utilities, telephone and educational expenses, and paid for maintaining the automobile used by petitioners.↩
7. In support of this claim, petitioners produced documents from ULC stating that "Our records show you have contributed to the church the aggregate amount" of $5,025 in 1978, $16,000 in 1979 and $23,510 in 1980. The custodian of those records, Mr. Imbeau, testified that he prepared the records by referring to cancelled checks made payable to Symphony of Life Church-ULC which were submitted to him by petitioners. In preparing the records, Mr. Imbeau referred to quarterly reports of Symphony of Life Church-ULC which also were prepared by petitioners. We attach little weight to the ULC documents, as they were prepared from information supplied entirely by petitioners. The records prepared by Mr. Imbeau are not sufficient to show that petitioners' contributions were actually made to ULC.↩